## WILLIAM H. ROGERS, Respondent, v. MODERN BROTHERHOOD OF AMERICA, Appellant.

### Kansas City Court of Appeals, June 8, 1908.

1. **ACCIDENT INSURANCE: Contract: Construction: Definition.** The construction of a contract is a question for the court and not an issue of fact for the jury, and the term "leg" used in an accident insurance policy should be defined by the court, who should not permit either party to introduce evidence to define the word.

2. ———: ———. ———. ———. The word "leg" used in an accident insurance policy is the complete limb and necessarily includes the foot covering the heel.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

131 App.—23

*J. B. Johnson* and *Ball & Sparrow,* for appellant, filed argument.

*A. E. Elliott* for respondent.

(1)    The action of the trial court will not be reversed by an appellate court unless the trial court has, in granting a new trial, acted arbitrarily or oppressively, or been guilty of an injustice.    Kuenzel v. Stevens, 155 Mo. 281; Haven v. Railroad, 155 Mo. 216.

JOHNSON, J.—Action against a fraternal beneficiary association brought by the holder of a benefit certificate to recover indemnity under the following provision:    "Should said member while in good standing, accidentally break his leg or arm, he shall receive one-tenth the amount his beneficiary would have been entitled to receive in case of the death of said member." Plaintiff alleges in his petition that he broke his leg accidentally on the 15th of August, 1906.    The proof shows that the only bone fractured was the heel bone (*os Calcis.*)    A physician introduced as a witness by defendant testified that anatomists define the word "leg" as that part of one of the supporting limbs which extends from the knee to the ankle.    Counsel for plaintiff on cross-examination asked the witness what the word meant "in common parlance."    Defendant objected to the question on the ground that the common definition of the word was not a legitimate subject about which to elicit expert opinion.    The objection was sustained.    The case was sent to the jury under the following instructions, the first of which was asked by plaintiff, the second by defendant:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff accidentally broke his leg on or about the 15th day of August, 1906, your verdict should be for plaintiff in the sum of $200."

"The court instructs the jury that before plaintiff

can recover in this action, he must prove by the greater weight of the evidence that he accidentally broke his leg, and unless he has so proven your verdict should be for defendant."

Thus instructed, the jury returned a verdict for defendant but, afterward the court granted plaintiff a new trial on the grounds that "the court erred in rejecting evidence as to what constitutes a leg; and the verdict is against the weight of the testimony as to what constitutes a leg." Defendant appealed.

The construction of the contract between the parties was a question of law for the court and not an issue of fact for the jury. The definition of the word "leg" should not be controlled or even influenced by the meaning placed on it by specialists since the word has a well-defined common meaning. Terms used exclusively by experts may require expert definition, but those referring to matters of common knowledge need not be so defined. Parties in contracting are supposed to use language in its commonly accepted sense and courts and juries do not require the aid of experts to tell them what such language means. The learned trial judge should not have permitted either party to introduce evidence to define the word but should have ascertained its meaning from the language of the contract and instructed the jury accordingly.

The agreement of defendant was to indemnify plaintiff in case he should "accidentally break his leg or arm." Evidently the parties intended to use the words "leg" and "arm" in the broadest sense. Medical men generally employ the word leg in its etymological and most restricted meaning of referring to the portion of the limb between the knee and ankle joint, and when they speak of the bones of the leg they refer to the *patella* (knee cap), the *tibia* and *fibula*. It is too absurd for serious consideration to think that in speaking generally of an arm and leg, the contracting par-

ties intended to provide indemnity for a fracture of no other bones in the leg than those comprised in the middle section.    Lexicographers define "leg" and "arm" as follows:    *Leg*:    A limb or member of an animal used for supporting the body and in running, climbing and swimming; especially that part of the limb between the knee and foot.    *Arm*:    "The limb of the human body which extends from the shoulder to the hand."    (Webster).    But when one thinks of arms and legs as of limbs, it is manifest that hands and feet must be included.    The human body has four limbs, two arms and two legs; each divided into three sections, and it takes all three to make a complete limb.    The term "arm's length" refers to the length of the entire limb including the hand.    "Leg bail," "on one's legs," "as fast as his legs would carry him," all refer to the complete limb and necessarily include the foot.    Under the rule which requires us to interpret the certificate most liberally in favor of the holder, we cannot avoid the conclusion that in providing indemnity should the member "break his leg or arm," the parties intended to cover fractures of bones of the limbs, whether such bones were in the hands or feet, or were in the upper or central divisions of the limbs.    A fracture of the heel bone was covered by the certificate and the court should have so instructed the jury.

No error was committed in sustaining the motion for a new trial.

The judgment is affirmed.    All concur.