JEREMIAH FRUIN et al, Respondents, v. C. A. MEREDITH et al., Appellants.

St. Louis Court of Appeals    Argued and Submitted November 2, 1909.    Opinion Filed November 16, 1909.

1. **CITY OF ST. LOUIS: Special Taxbills: Limitation: Charter Provisions: Section 25 of Art. 6 Construed: "Paid" Held to Mean "Payable."** The word "paid" in that part of section 25 of art. 6 of the charter of the city of St. Louis, which provides that where special taxbills are not paid in installments, the lien thereof shall terminate within two years after their date, should be read "payable," making said provision read, "that where bills are not payable in installments, the lien shall terminate within two years after their date"; and a special

taxbill, dated January 5, 1906, payable in seven installments, upon which suit was brought on January 11, 1908—the holder, upon default having been made in the payment of the first installment, having elected to treat all installments as due—was not barred by limitation, under said provision.

2. **MUNICIPAL CORPORATIONS: Charter Provisions: Ordinances: Construction.** A construction of charter provisions and ordinances which leads to an absurdity is not to be tolerated.

3. **LAWS: Construction.** Laws are to be so construed as to give every part of them effect and to carry out the manifest intention of the framers and makers of them and so as to avoid an absurd result.

4. **CITY OF ST. LOUIS: Special Taxbills: Charter Provisions: Use of Several Lots as One.** Where several lots fronting on a street and extending back to a parallel street are by use made one lot, the charter of the city of St. Louis requires that, for street improvements, they be assessed as one lot and that the line for assessment be drawn midway between the street on which they front and the parallel street.

5. **APPELLATE PRACTICE: Municipal Corporations: Special Taxbills: Finding of the Trial Court Conclusive.** An action on a special taxbill is an action at law, and the conclusion of the trial court on the facts is conclusive if it is supported by substantial testimony.

6. **INSTRUCTIONS: Trial by Court: Failure to Give Specific Instruction: *Covered by Other Instructions*.** In a trial before the court without a jury, where it appears the court had a correct conception of the law applicable to the case and correctly applied it, mere failure to give specific declarations of law, the principle covered by which is embodied in other declarations given, is not ground for reversal; but to warrant a reversal for such failure, it must appear that the principle covered had either not been given in other declarations, or had been incorrectly declared.

7. **MUNICIPAL CORPORATIONS: Special Taxbills: Pleading: Defenses Available Under General Denial.** The defense, in an action on special taxbills issued against distinct lots, that one taxbill should have been issued against all the lots, on the ground that they were one for purposes of assessment, is available under a general denial.

8. ——: ——: **Evidence: Presumption.** A special taxbill for public works should carry with it some presumption that the officers charged with the duty of issuing it have correctly discharged that duty.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*Julius T. Muench* for appellants.

(1) It being conceded that default was made on the whole bills, and that no part of them was ever paid, it is clear that the bills were not paid in installments, withing the meaning of the charter, and the lien thereof consequently terminated within two years after the date of the bills, six days before the suit was instituted. Charter, city of St. Louis, art. VI., sec. 25. (2) The purchase of lots 1, 2, 3 and 4 by defendant Meredith and the erection of improvements thereon, and the consequent use thereof, in total disregard of the platted lines, as one consolidated tract, made the four lots but one lot for the purpose of this assessment, and but one taxbill should have been issued against the property, instead of separate bills for each of the original lots. Charter, city of St. Louis, art. VI., sec. 14; State ex rel. v. St. Louis, 211 Mo. 607; Paving Co. v. Peck, 186 Mo. 516; Wolfert v. St. Louis, 115 Mo. 144; Kemper v. King, 11 Mo. App. 116; Hill-Omeara Co. v. Sessinghaus, 106 Mo. App. 163; Heman Const. Co. v. Loevy, 64 Mo. App. 430. (3) The undisputed evidence shows that the improvements erected upon the consolidated lot, made up of lots 1, 2, 3 and 4, fronted on Florissant avenue, and it was therefore improper, in defining the taxing district for the improvement of Warne avenue, to include the whole of the lot on Mary avenue, but a line should have been drawn through the property midway between Warne and Mary avenues, so as to include only one-half of the property. Collier Est. v. Paving Co., 180 Mo. 362.

*George D. Harris* for respondent.

(1) The lien of the taxbills in suit did not terminate until two years after their maturity, and as suit was instituted within that time, it was not barred by limitation. St. Louis Charter, art. VI, sec. 25; Gilsonite Const. Co. v. Coal Co., 205 Mo. 49. (2) The defense that one taxbill should have been issued instead of four was not raised in the answer of appellants, and cannot be considered on appeal. Veiths v. The Planet P. & F. Co., 64 Mo. App. 207; Kansas City to use v. American Surety Co., 71 Mo. App. 315; City of Carthage v. Badgley, 73 Mo. App. 123; Construction Co. v. Hutchinson, 100 Mo. App. 294; Barber Asphalt Paving Company v. Field, 188 Mo. 182; Jaicks v. Merrill, 201 Mo. 91. (3) Appellants cannot complain of the issuance of four taxbills against the lots as platted, instead of one taxbill against all the lots, as no injury was proved or provable. Forry v. Ridge, 56 Mo. App. 615; Whittemore v. Sills, 76 Mo. App. 248; State ex rel. Stifel v. Flad, 26 Mo. App. 500; Fowler v. St. Joseph, 37 Mo. 228; Sheehan v. Owen, 82 Mo. 458; Cole v. Skrainka, 105 Mo. 303; McCoy v. Randall, 121 S. W. Rep. (Mo. Sup.) 31; Barber v. City of Chicago, 152 Ill. 37; Page and Jones, Taxation by Assessment, vol. 2, sec. 895; 28 Cyc. 1134. (4) It was proper to issue taxbills against the lots as platted. State ex rel. Paving Co. v. St. Louis, 183 Mo. 230. The improvements erected on the lots in question did not have the effect of creating a distinct change of frontage, and they were properly assessed as fronting on Warne avenue. State ex rel. v. St. Louis, 211 Mo. 591. Where the owner of property pays taxes assessed against it as fronting on a certain street, and describes it in deeds of conveyance as fronting thereon, he cannot complain that special assessments have been made against it on the basis of such frontage. Harts v. The People, 171 Ill. 373; Hamilton, Law of Special Assessments, sec. 540. (5) What is the frontage of a lot

is a question of fact. Page and Jones, Taxation by Assessment, vol. 1, sec. 625, p. 1058. (6) Appellants having admitted that part of the lots in suit were subject to an assessment for the improvement of Warne avenue, and having tried the case on the theory that the taxbills issued against them were void, cannot complain of the judgment of the trial court. Neill v. Ridge, 119 S. W. 619; Construction Co. v. Loevy, 179 Mo. 455.

STATEMENT.—The facts in the case are set forth so fully by counsel for the appellants, that opposing counsel have filed no counter-statement, and it is so satisfactory to the court that we adopt practically all of it, so far as it goes, as set out by counsel. It is as follows:

"This is an action in the usual form, for the enforcement of four special taxbills for the improvement of Warne avenue, against a parcel of ground in city block No. 3545, of the city of St. Louis, lying between Warne, Florissant and Mary avenues, as shown upon the plat filed with the abstract.

"Four bills were issued against this property on the theory that it comprised four distinct lots, known as Nos. 1, 2, 3 and 4, fronting on Warne avenue. The petition is in four counts, one for each taxbill.

"The petition alleges, and the evidence shows, that the taxbills were issued on the 5th day of January, 1906, and were, on the same day, registered in the office of the Board of Public Improvements and in the Comptroller's office, and certified and delivered to plaintiffs, and that, on the 12th day of January, 1906, the defendant C. A. Meredith acknowledged in writing the service of notice of the bills and demand for payment of the same. Each of the bills had attached to it seven installment coupons, in accordance with the Charter and the ordinance authorizing the improvement, the first installment being due on February 12, 1906, thirty days after the notice had been given of the issuance of the bills, and

the remaining installments at yearly intervals there-after, until all had been paid.

"Default was made in the payment of the first installment, and each count of the plaintiff's petition contains the following language:

" 'Plaintiffs have elected, and do elect, to treat all of said installments and the interest thereon as due February 12, 1906, the date when defendant defaulted in the payment of the first installment of said special tax-bill as provided by the Charter of the city of St. Louis.'

"The petition was filed January 11, 1908.

"Three distinct defenses were raised by the answer:

"(1)  That the lien of the special taxbills sued upon had expired by limitation, under the terms of section 25, of article 6, of the Amended Charter of the city of St. Louis;

"(2)  That the taxbills were erroneously issued, in that lots 1, 2, 3 and 4 were treated and taxed as separate and distinct lots, whereas they had, by use, become one lot within the meaning of the Charter; and,

"(3)  That the taxing district had been improperly defined, in that the total depth of lots 1, 2, 3 and 4 had been included in the taxing district, although the improvements upon the consolidated lot were built to front, and said lot was treated by the defendants as fronting, on Florissant avenue, in consequence whereof the line bounding the taxing district should have been drawn midway between Warne and Mary avenues.

"The theories of the answer were later embodied in three declarations of law, asked on behalf of the defendants, one of which the trial court gave, and two of which it refused to give.

"The declaration given by the court is as follows:

" '(3)  The court declares the law to be that if the court sitting as a jury should find from the evidence that the four lots respectively described in the four counts of plaintiff's petition are adjacent, that the owners of said property have, in the use thereof, disregarded

the lines of said platted lots and have treated the said four lots as one lot, then the portion of the cost of improving Warne avenue properly assessable against said land of defendants, should have been assessed against said four platted lots as one lot, and the taxbills herein sued upon being assessed against said platted lots separately, are invalid and plaintiffs cannot recover thereon.'

"The two declarations refused by the court are as follows:

" '(4)    The court declares the law to be that if the court sitting as a jury should find from the evidence that the land described in the four taxbills herein sued upon consists of four lots, as shown by a recorded plat, that said lots as platted fronted on Warne avenue, the street improved, and extended to Mary avenue, the next parallel or converging street; and if the court sitting as a jury should further find that the defendants, owners of the said land, before the improvement of Warne avenue and the issuance of the special taxbills herein sued upon, had by their use of the said lots disregarded the lines of said lots as platted and had used and treated said four lots, or any two or more of them, or fractions thereof, as one lot, and had used the portion of said land so used as one lot as fronting upon Florissant avenue, instead of fronting on said Warne avenue, then the line of the taxing district for the assessment of three-fourths of the cost of improving Warne avenue should, under the provisions of the Charter of the city of St. Louis, have been placed midway between said Warne avenue and Mary avenue, the next parallel or converging street on the west of said Warne avenue, in the portion of said platted lots so used as one lot fronting on Florissant avenue, and the court therefore finds that as the said district line was as to said portion of said land, placed at the east line of said Mary avenue, instead of midway between said Mary avenue and Warne avenue, the said taxing dis-

trict was not established according to the provisions of the Charter of the city of St. Louis, and the taxbills herein sued upon are illegal and void, and the judgment must be for defendants.'

"(5) The court declares the law to be that, if the court, sitting as a jury, should find from the evidence that the taxbills herein sued upon were issued and delivered to the plaintiffs on January 5, 1906, and that no installment of any said special taxbills has been paid, and that suit to enforce the collection of said special taxbills was not commenced until the 11th day of January, 1908, then the said special taxbills are barred by limitation.

"The evidence showed that the property in controversy was bought by defendant Meredith, as vacant property, from the Franklin Bank, on October 29, 1897, and that in 1903 he erected on lots 1, 2 and 3 a two-story brick building containing stores and flats; that three of the stores, occupied, respectively, as a millinery shop, a shoe store and a grocery, fronted on Florissant avenue, and that only one store, occupied as a butcher shop, fronted on Warne avenue; that the first three stores were numbered on Florissant avenue, and that the flats above the shoe store and grocery were reached from Florissant avenue, that above the millinery shop from Mary, and that above the butcher shop from Warne avenue.

"There was also testimony that the Florissant avenue side of the building was constructed of better brick than the Mary and Warne avenue sides, and that it had an ornamental coping which did not extend around the other sides; that the entire construction indicated that the Florissant avenue side was the front.

"The evidence further showed that the parts of lots 1, 2 and 3, not built upon, together with lot 4, were used as a common yard by various of the tenants for

145 App—38

the storage of wagons, and by all the tenants as a play-ground for their children, for hanging out the wash, and for other purposes; that all the tenants used a common ashpit, situated on the rear of the premises, and that the butcher and the grocer jointly used a stable built on lots 3 and 4."

We will add to the foregoing statement of counsel that an inspection of the plat in evidence shows that the space occupied on Florissant avenue by the buildings is 62x62 feet, while the space covered by the buildings on Warne avenue is 73x18 feet. The total front of the four lots on Warne avenue is 110.48 feet; on Florissant 62.62 feet. There are no buildings on Warne avenue on that part of lot 4, 25 feet, or on 12.30 feet of lot 3. Whatever improvements are on lot 4 consist of a frame stable, which covers 27.45 feet or lot 4, and about 12 feet of lot 3, and these are on Mary avenue. The ashpit in the rear of lot 3 is on Mary avenue. The building on the corner of Mary and Florissant avenues, occupied as a millinery store, is 63.35 feet on Mary avenue by 22.35 on Florissant. It should also be noted that in addition to offering the special taxbills and of the service of notice of the issue of them and demand for payment, a plat showing the lot lines and improvements was in evidence, which was prepared by a drafts-man employed in the special tax department of the city of St. Louis, who testified that the lot lines were taken from the official plat book. He also described the character and location of the buildings which he had marked on the plat. There was a stipulation of facts, by which, among other things, it was stipulated that the plat introduced in evidence is a true and correct plat of lots 1, 2, 3 and 4, in city block 3545, covering the premises in controversy and that it correctly shows the boundaries and dimensions of said lots and the location of the improvements thereon: that lots 1, 2, 3 and 4 were conveyed by the Franklin Bank to one Meredith, in 1897, and in the deed of conveyance the

lots were described as fronting on Warne avenue; that in 1902, the brick buildings on lots 1, 2 and 3 were erected and that the stable on lots 3 and 4 was erected in 1907; that in 1902, Meredith and wife executed a deed of trust to the Franklin Bank, trustee, in which deed of trust the lots were described as fronting on Warne avenue and that in 1907, the lots were conveyed by Meredith and wife to the defendant Fountain Real Estate and Investment Company, the lots being described in that conveyance as fronting on Warne avenue; that plaintiffs were the contractors for making the street improvements and that the taxbills now in suit had been issued to them, and that on January 12, 1906, notice of the issuance of the taxbills had been delivered to the defendant Meredith, the record owner of the property on that date and that no part of the taxbills had been paid. The eighth clause of the stipulation was to the effect that prior to and since the improvement of Warne avenue, for which the taxbills were issued, taxes for state, school and city purposes have been levied and assessed against lots 1, 2, 3 and 4, in city block 3545, as fronting on Warne avenue, and that the taxes so levied and assessed had been paid by the defendant Meredith. Defendants' counsel objected to this paragraph on the ground that the facts stated were immaterial. The court overruled the objection and plaintiffs excepted. The files were introduced to show commencement of suit January 11, 1908. The taxbills themselves were in evidence, and defendants introduced testimony tending to prove the use of the lots as one lot, and going fully into the character and location of the buildings, all this evidence being directed to prove that the use of the property was as one lot, although it also appears that the several buildings are occupied by various and different tenants.

At the instance of plaintiffs, the court gave two declarations of law. The first was to the effect that if the taxbills sued on were issued and delivered to

plaintiffs on January 5, 1906, and notices of their issue served on defendant Meredith, the record owner of the property in suit, on January 12, 1906, and suit to enforce collection of the special taxbills was commenced on January 11, 1908, then the court declares the law to be that the taxbills are not barred by limitation.

The second declaration of law is to the effect that the court declares the law to be that if sitting as a jury it finds from the evidence that the property in suit was platted into lots fronting on Warne avenue and extending to Mary avenue, and that the special taxbills were issued agaist the lots as platted, and that the lots were assessed for general taxes as fronting on Warne avenue, before and after the improvement of that avenue by plaintiffs, and that the taxes so assessed were paid by defendant Meredith, and that after the issuance of the taxbills sued on Meredith conveyed the property to the Fountain Real Estate & Investment Company, and in the deed of conveyance described the lots as fronting on Warne avenue, and if the court further finds from the evidence that before the improvement of Warne avenue by plaintiffs, a building had been erected on parts of lots 1, 2 and 3, consisting of stores and flats, and that part of the building fronts on Florissant and the remainder on Warne avenue and that the frame shed or stable on lot 4 was used by the tenants of the grocery store at the corner of Florissant and Warne avenues and by the tenant of the butcher shop on Warne avenue, and that the remainder of lots 1, 2, 3 and 4 was used in common by tenants in said building, then the court declares the law to be that the frontage of lots 1, 2, 3 and 4 has not been changed by user from Warne avenue to Florissant avenue, and the special taxbills sued on were properly issued. Exception was saved to the giving of these declarations by the defendants and, as before noted in this statement, the court gave the third declaration of law asked by defendants, but refused the fourth and fifth. These have been here-

tofore set out. The first and second declarations of law asked do not appear in the record, but no point is made on their refusal.

There was a finding for plaintiffs and judgment in their favor for the full amount of the bills sued on, with interest, and they were severally adjudged to be liens against the four lots described. Motion for rehearing was filed, overruled, exception saved, and the case brought to this court on appeal by the defendants.

REYNOLDS, P. J. (after stating the facts).— While counsel for appellants saved exception to the giving of the declarations of law on behalf of plaintiff and to the refusal to give two of the three which defendants asked, in presenting the case to us, they make but three points: First, that suit had not been brought on the taxbills within two years after date of the bills, the bills being dated January 5, 1906, the suit having been brought January 11, 1908, and no installments having been ever paid, that the lien had expired under the provisions of section 25, article 6, of the Charter of St. Louis; second, that the purchase of the lots by the defendant Meredith, and the erection of improvements thereon and subsequent use thereof, in total disregard of platted lot lines, made the four lots but one lot, for the purposes of this assessment, and therefore but one taxbill should have been issued against the property instead of separate bills for each of the original lots; and third, that the undisputed evidence shows that the improvements erected upon the consolidated lots made up of lots 1, 2, 3 and 4, fronted on Florissant avenue, and it was therefore improper in defining the taxing district for the improvement of Warne avenue to include the whole of the lot to Mary avenue; that the line should have been drawn through the property midway between Warne and Mary avenues so as to include only one-half of the property.

Taking up the propositions involved in the order named, we cannot agree with the contention of the learned and experienced counsel for appellants, that the suit is barred on these taxbills by the special limitation in the charter of the city of St. Louis, as amended in 1901. Counsel for appellants cite no authority for this contention, except section 25, article 6, of the charter of St. Louis, as amended in 1901. This section 25, article 6, provides that the special taxbills authorized by the charter, "for the construction or reconstruction of streets, avenues, highways, boulevards or districts, or joint district sewers, shall be divided into not less than three, nor more than seven, equal parts, as may be provided by the ordinance authorizing such improvements, payable and collectible in installments as follows: The first installment shall become due and payable thirty days after the notice of the issuance thereof, without interest; the second installment shall become due and payable one year after such notice; the third installment, two years; the fourth installment, three years; the fifth installment, four years; the sixth installment, five years; and the seventh installment, six years after such notice; provided, however, that the owner or any person having an interest in the property charged with a taxbill may pay the same in full at any time within thirty days after notice as aforesaid, without interest, and such owner or person having an interest may pay such taxbills in full at any time by paying interest thereon as follows: If paid at or before maturity and more than thirty days after notice, as aforesaid, at the rate of six per cent per annum from date of notice to date of maturity, and at the rate of eight per cent per annum from date of maturity to date of payment; all interest shall be payable annually from date of notice of the issuance of taxbills. If any installment of any such special taxbills, or any interest on any installment, be not paid before due, then, at the option of the holder thereof,

all remaining installments shall become due and collectible, together with interest thereon as aforesaid. Suits may be brought to enforce the payment of such special taxbills, or any installment or installments thereof, with any interest due on any installment, in the manner herein provided for the bringing of such suits on other special taxbills."

Following this is the provision for the limitation of the lien of special taxbills, in which are the following provisions:

"Whenever any special taxbill issued heretofore, or hereafter to be issued, to a contractor or contractors, shall be paid, it shall be entered satisfied on the register in the comptroller's office, and the lien of any bills so issued that is not entered satisfied within two years after its maturity, unless proceedings in law shall have been commenced to collect the same within that time, and shall still be pending shall be destroyed and of no effect against the land charged therewith; provided, however, that where bills are not paid in installments, the lien thereof shall terminate within two years after their date, unless such proceedings shall have been commenced within that time and be still pending."

The real contention over this limitation clause turns upon the meaning of the word "paid" in the proviso. To repeat that proviso as written, it is, "that where bills are not *paid* in installments, the lien thereof shall terminate within two years after their date, unless such proceedings shall have been commenced within that time and be still pending." The date of these bills was January 5, 1906, notice of issue served January 12, 1906, this action instituted January 11, 1908. Construing the sections together and having reference to the charter before it was amended, we agree with counsel for respondents that this word "paid" as here used, should be read 'payable," so that that proviso would read "that where bills are not payable in installments, the lien shall terminate within two years after their

date." We can give the clause no practical or sensible interpretation, unless it is so read. This section 25 of the charter, as it now stands, distinctly gives the right of payment of these assessments by installments, which "shall be divided into not less than three, nor more than seven, equal parts," the first installment becoming due and payable thirty days after the notice of issue thereof, the second installment becoming due and payable one year after notice, and the subsequent installments becoming due and payable at intervals of one year thereafter, so that the seventh installment is due and payable six years after notice of issue, and if the bill is divided into seven payments, the last installment would be due and payable about six years after the notice of the-taxbills. Therefore, if this proviso is to be read literally, right of action on them would have terminated or their lien would have fallen before they were payable. That cannot be. We may suppose this case: That the debtor owner of the property against whom the taxbill is issued, having the right to pay in seven installments, has paid the first within the thirty days after notice, the second one year after notice, the third two years after notice, the fourth three years after notice, and makes default in the payment of the fifth installment. Thereupon, under the law, the sixth and seventh become due and payable. But the unfortunate holder of the taxbills has then lost his lien and cannot enforce payment of it, because more than two years have elapsed after their date. That applies when the bill has been divided into seven installments, which is the maximum number allowed. Mark that the charter provision is mandatory: "*Shall* be divided into not less than three, nor more than seven, equal parts." Suppose they are divided into three installments, the minimum. The owner pays the first within the thirty days, the second at the end of or within one year after the notice. He is not in default on the third until the last hour of the last day of the second year has elapsed,

and cannot be sued until the beginning of the third year. If sued then, as more than the two years have elapsed, suit is barred, the lien of that installment of the taxbill lost. Any such construction leads to an absurdity, which most certainly is not to be tolerated any more in the construction of charter provisions and ordinances than in statutory law. Surely no such result was contemplated in the use, in this proviso, of this word "paid." Following the well-settled rule of construction, that laws are to be so construed as to give every part of them effect, and to carry out the manifest intention of the framers and makers of them, and so as to avoid an absurd result, we can arrive at no conclusion other than that this particular word "paid," construing it in connection with the whole paragraph, is to be read and construed as if the word "payable" had been used. That construction being applied to the case at bar, the claim made as to this action being barred, falls, and there was no error in the action of the trial court in refusing to declare the law as asked by the defendants on this branch of the case.

In support of their second proposition, that the user of the lots by the owners made them but one lot for the purposes of this assessment, and that but one taxbill should have been issued against the property instead of separate bills for each of the original lots, the learned and experienced counsel for defendants cite the charter of the city of St. Louis, art. VI, sec. 14, and these cases: State ex rel. Skrainka v. St. Louis, 211 Mo. 591, l. c. 607; Paving Co. v. Peck, 186 Mo. 506, l. c. 516; Wolfort v. City of St. Louis, 115 Mo. 139, l. c. 144; Kemper v. King, 11 Mo. App. 116; Hill-O'Meara Co. v. Sessinghaus, 106 Mo. App. 163; Heman Construction Co. v. Loevy, 64 Mo. App. 430.. This is the real point in issue, that is, whether the user of the lots made them one lot. If so, the charter not only requires that they be assessed as one lot, but that the line for assessment should have been drawn midway

between Warne and Mary avenues, and not at Mary avenue; in brief, only one-half and not all of their area should have been included for purposes of assessment for the improvement of Warne avenue.

The third proposition advanced by counsel for appellant, that the undisputed evidence in the case shows that the improvements erected upon the consolidated lots made up of the four lots, had a frontage on Florissant avenue and not on Warne avenue, and that it was therefore improper in defining the taxing district for the improvement on Warne avenue to include the whole of the lot to Mary avenue, but that a line should be drawn through the property midway between Warne avenue and Mary avenue so as to include one-half of the property, is so intimately connected with the above proposition that we will discuss them together. As specifically in support of this the case of Collier Est. v. Western Pav. & Supply Co., 180 Mo. 362, is cited. An examination of this, as well as of the other cases above cited, fails to convince us that the action of the lower court in giving and refusing the declarations of law covering this branch of the case, and in finding contrary to the contention of counsel for appellants, was erroneous. With the plat, and with the testimony of the witnesses before it on the question of user, it was a question of fact for the trial court to determine whether the user had changed the lots from four lots, as platted, into one lot. In the instructions given, both for the plaintiffs and the defendants, the trial judge distinctly recognized as law, that user could effect such a change; that they must be treated as one for the purposes of the issue of special taxbills, when they are in fact used as one lot. This is an action at law; it was so treated by the court and the parties; hence the conclusion of the court on the facts, if that conclusion is supported by substantial testimony, is conclusive upon this court. The principles of law announced in the Collier and Skrainka cases, were, in our opinion, followed in this

case, the court, in the case at bar, finding, on the facts, that the lots were to be assessed as four lots, and that the evidence of user had not altered the situation. In the Collier case, on the facts there in evidence, a different conclusion was reached. So that we think that in disposing of this case, the trial court was in entire harmony with the law as handed down in this and in the other cases cited.

Complaint is made of the refusal to give the declaration of law asked by defendants and marked in the foregoing statement (4). If this case had been tried before a jury, it is possible that defendants would have been entitled to have had that given as an instruction. The parties have a right to have the jury fully instructed on their theory of the law. But this was a trial before the court without a jury and when it appears, as it does in this case, that the trial judge has a correct conception of the law as applicable to the case on trial and has correctly applied it, mere failure to give specific declarations, the principle covered by which is embodied in declarations given, is not ground for reversal. It must appear, to warrant reversal for failure to give a declaration of law asked, that the principle covered by the declaration had either not been given in other declarations or had been incorrectly declared; that the refusal of the declaration shows that the trial judge misconceived the law. That was not the case here. The trial judge recognized through the trial and by the declarations he did give, the principle covered by this fourth refused instruction.

It is suggested by counsel for respondents, in his very fair argument, that the defense that one taxbill should have been issued instead of four, was not raised in the answer of appellants and cannot be considered on appeal. While citing several authorities claimed to be in support of this proposition, counsel very frankly cites us to Cushing v. Powell, 130 Mo. App. 576. An examination of that case shows, that in an exceedingly

well-considered opinion by Judge Ellison of the Kansas City Court of Appeals, that learned jurist holds that a defense of the character here referred to is admissible under the general issue. Referring to pleading in connection with these special taxbill cases, Judge Ellison says (l. c. 579) : "In this case it was necessary for plaintiff to prove that he had a valid lien subject to enforcement against defendant's property. It took, of course, several proper steps or legal proceedings to finally take the form of a taxbill as a valid lien on the defendant's property. The omission of these would prevent the proceeding ripening into a valid taxbill and lien—would show that the lien and bill never had arisen or been brought into existence. Therefore a general denial should let in such evidence." We think that an application of the rule here so clearly set out answers the suggestion of counsel for respondent. This is a minor consideration, however.

We have not undertaken to go into a lengthy discussion or analysis of the cases cited or into the matter of special taxbills. The law in this State in relation to these matters of street improvements and of the assessment of property for payment thereof may be said to be fairly well settled. It certainly is, so far as concerns the main question in this case. Even if we had the power to disturb the finding of the trial court on the question of the weight of evidence, we would not be disposed to do so in a case of this character, having in mind the great importance to the people of the city of St. Louis, and for that matter, the people of the various cities of the State, in which public improvements are being made, of not only not overturning or disturbing taxbills, on doubtful or debatable grounds, but of holding fast to the law declared. Not only should there be stability of decision in this class of cases, but the bills for public works, issued by public servants, should carry with them at least some presumption that the officers charged with the duty of is-

suing them have correctly discharged that duty. The contractor does not make out these bills; they are made out by officers of the public. On the ability of the contractors to collect on these bills when so made, depends, not only the making of improvements themselves, but the cost of the improvements to the property-owners, as also the general public. If these taxbills are to be overthrown for slight cause, and on doubtful evidence, or on strained and technical construction of the law itself, the consequences are almost disastrous. They thereby become so discredited and so much under suspicion, that responsible parties will be loth to enter upon contracts for public work, few contractors can carry on great public works entirely with their own funds and they must borrow, the banks and financial institutions will be loth to loan or to make advances to contractors on account of anticipated payment which must be made out of these taxbills, and the uncertainty connected with the payment of the bills will not only hinder public improvements, but largely enhance the price of these improvements themselves. If, therefore, this was a doubtful case on the evidence, and on that the learned trial judge has concluded us, and in as much as there is no pretense that this improvement was not made on Warne avenue, and no pretense that it was not made in accordance with contract, and at fair and reasonable prices, and as it was an improvement that undoubtedly went to the enhancement of the value of the property of these defendants, none of which matters, however, are open to inquiry in this case, for it stands on the taxbills alone, we would decline to disturb the finding of the lower court and it is affirmed. All concur.