## J. N. FELLOWS, Respondent, v. GEORGE B. DORSEY, Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. TAXBILLS: Pleading: Allegations. A petition, in an action on taxbills, which alleges the facts required by the statute (Sec. 9296, R. S. 1909), is sufficient.

2. ———: Preliminary Resolution. The preliminary resolution declaring it necessary that certain streets of a city of the third class should be paved, should substantially inform the public of the kind and character of improvement intended, otherwise the proceedings and taxbills will be invalid.

3. ———: Resolution: Publication. A preliminary resolution for a public improvement published in a daily paper from June 27th to, and including, July 6th, except on June 28th, July 4th and 5th, is in full compliance with the requirements of Sec. 9255, R. S. 1909.

4. ———: Contracts: Delegaton of Power by City Council. A contract for street improvement which leaves to the determina-

171 Mo. App.—19

tion of the city engineer the time when the work should begin is not invalid. Such a provision is not an attempt by the city council to delegate a legislative duty to the engineer.

5. ————: Variance Between Ordinance and Resolution: Contractor. Where a preliminary resolution for a public improvement provides that the gutter shall be grouted without further specifications, it is left to the council to provide the specifications; and if the specifications in the ordinance were faulty, the contractor is not at fault.

6. ————: Instructions: Definitions: Sand. An instruction, which undertakes to instruct the jury as to the meaning of the word "sand" as used in a contract for street improvement, is not erroneous.

### Opinion on Rehearing by Trimble, J.

7. ————: Instructions: Custom and Usage. Upon rehearing it was *held* that the instruction given for plaintiff, which told the jury that if they believed the word "sand" meant sand that would go through a 20 sieve, then the contract has been complied with, was erroneous, there being no evidence that a 20 sieve would separate sand from gravel, while on the contrary there was evidence that it was not a proper sieve for this purpose.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*W. H. Rothwell* and *E. W. Hinton* for appellant.

(1)  The petition fails to state a cause of action for the reason that it fails to allege all of the necessary conditions precedent to a valid special assessment. Irvin v. Devors, 65 Mo. 625; St. Louis v. Rankin, 96 Mo. 497; Joplin v. Hollingshead, 123 Mo. App. 602. (2)  The tax bill is void because the preliminary resolution failed to describe or specify the gutter work. City of Bacon, 144 Mo. App. 476; Coulter v. Const. Co., 131 Mo. App. 230; Barber v. O'Brien, 128 Mo. App. 267; Kansas City v. Asken, 105 Mo. App. 84; Kirksville v. Coleman, 103 Mo. App. 215. (3)  The tax bill was void because the preliminary resolution was

not published for seven consecutive days. R. S. 1909, sec. 9255; Mitchell v. Taylor, 143 Mo. App. 683. (4) The tax bill for the work is void because the contract left it to the engineer to determine when work should begin, thus indefinitely delaying completion beyond a reasonable time. Childers v. Holmes, 95 Mo. App. 154; McQuiddy v. Brannock, 70 Mo. App. 535; Ayers v. Schmohl, 86 Mo. App. 349. (5) The tax bill is void because the contract and specifications depart from the preliminary resolution in providing for the construction of a worthless and unserviceable gutter. City v. Bacon, 144 Mo. App. 476. (6) The tax bill was void because the gutter specified in the contract was not reasonably suited to the purpose, and the city council had no power to make an unreasonable contract at the expense of the property owners. Corrigan v. Gage, 68 Mo. 541; Springfield v. Jacobs, 101 Mo. App. 339. (7) The court erred in giving the fourth instruction for plaintiff leaving it to the jury to determine the meaning of sand as used in the contract because it was for the court to construe the contract, in the absence of any evidence of a binding usage varying the meaning. Rogers v. Modern Brotherhood, 131 Mo. App. 353; Martin v. Hall, 26 Mo. 386; Freight Co. v. Howard, 44 Mo. 71. (8) The third instruction for the plaintiff invaded the province of the jury, and withdrew an important evidential fact from their consideration, by informing the jury that defendant must prove a substantial deviation from the contract, and that the subsequent condition of the street would not authorize them to find for the defendant, thus denying the right of the jury to infer bad execution from bad results. State v. Salmon, 216 Mo. 466; James v. Ins. Co., 135 Mo. App. 247; Imboden v. Trust Co., 111 Mo. App. 220. (9) The court erred in placing the ultimate burden of proof on the defendant to disprove substantial performance of the contract, because of the mere prima facie showing made by the tax bill. State v.

Buck, 120 Mo. 497; Higgins v. Ry., 197 Mo. 300; Stone v. Perkins, 217 Mo. 600; People v. Cannon, 139 N. J. 132; Jones v. Bond, 40 Fed. 281.

*W. M. Williams* and *McBaine & Clark* for respondent.

(1)  Plaintiff's petition states a cause of action. Cushing v. Powell, 130 Mo. App. 177; Paving Co. v. Bath, 136 Mo. App. 555; Const. Co. v. McCormick, 157 Mo. App. 198; Robinson v. Levy, 217 Mo. 498.  (2) The preliminary resolution does not fail to sufficiently describe the gutter work.  Sec. 5859, R. S. 1899, and Laws of 1907, p. 103; Muff v. Cameron, 134 Mo. App. 607; Walker v. Chicago, 202 Ill. 531, 67 N. E. 369; Gage v. Chicago, 69 N. E. (Sup. Ct. Ill.) 588; McLannon v. Chicago, 218 Ill. 62, 75 N. E. 762; Gage v. Chicago, 237 Ill. 328, 86 N. E. 633; Gage v. Chicago, 225 Ill. 218, 80 N. E. 127.  (3)  The preliminary resolution was published as required by Sec. 5859, R. S. 1899.  Porter v. Pav. & Const. Co., 214 Mo. 1; Mexico v. Lakenan, 129 Mo. App. 180; Rosmussen v. People, 155 Ill. 70, 39 N. E. 606. (4) The time within which the work was to be completed was not left to the discretion of the engineer, and the work was completed in a reasonable time. Halsey v. Richardson, 139 Mo. App. 157; Allen v. Labsap, 188 Mo. 692.  (5)  The contract and specifications called for the construction of the kind of a street prescribed in the preliminary resolution.  There is no departure.  The street is not worthless.  The fault with the gutter is due to lack of proper drainage upon the street.  (6)  The fact that the city specified a gutter that was not a suitable gutter for the street improved will not defeat the contractor's right to recover on his tax bills issued for paving the street.  Heman v. Ring, 85 Mo. App. 231; Heman v. Franklin, 99 Mo. App. 346; Skinker v. Heman, 148 Mo. 349.  (7)  Instruction 4, given for the plaintiff does not constitute error.  Realty Co. v. Monihan, 179 Mo. 629; Evans v.

Mfg. Co., 118 Mo. 553. (8) The trial court did not commit error in giving instruction 3 offered by plaintiff and this instruction was not a comment upon the evidence. Tyler v. Hall, 106 Mo. 323; Nichalson v. Golden, 27 Mo. App. 132. (9) The burden of proof is on the defendant to show that there was not substantial performance of the contract. Bank v. Ridge, 183 Mo. 518; Moberly v. Hogan, 131 Mo. 23; Excelsior Springs v. Ettenson, 120 Mo. App. 215; State ex rel. v. Phillips, 137 Mo. 259, 264; State ex rel. v. Vogelson, 183 Mo. 17, 22; Paving Co. v. Bath, 136 Mo. App. 555. (10) The trial court did not commit error in giving plaintiff's instruction 7. The instruction follows the language of the specifications and puts the issue as to whether the work was done according to the specifications squarely to the jury. (11) Respondent concedes that the judgment should bear six instead of eight per cent; this court should therefore modify the judgment, but the case should not be reversed on that account. Boonville v. Stephens, 141 S. W. 1111. (12) Defendant's answer was a general denial and there was therefore nothing before the court but the validity of the tax bills, and as they were regular and valid the judgment below should be affirmed. Carthage v. Badgley, 73 Mo. App. 123; Vieth v. Planet Co., 64 Mo. App. 207; Bank v. Shewalter, 153 Mo. App. 636; Bambrick Bros. v. McCormick, 157 Mo. App. 198.

BROADDUS, P. J.—This is a suit to enforce the collection of a special tax bill issued to the contractor J. N. Fellows, for grading and macadamizing Anthony street in the city of Columbia, a city of the third class. The petition contains allegations to the effect that on the 15th day of June, 1908, the city council adopted a resolution declaring the necessity for the work; that due publication of the resolution was made; that the council duly passed an ordinance for the grading and macadamizing of the street; that, in pursuance of the

said ordinance, plaintiff entered into a contract on the 8th of August, 1908, with the city to do the work provided in said resolution and ordinance for the sum of $3254.568; that he duly performed said contract, and made the improvements by grading, paving and curbing said street; that said work was duly accepted by the council, and assessment for the cost of the work was made by an ordinance levying a special assessment for said improvement and authorizing the tax bills therefor; that the city caused the total cost of the work to be assessed against the lots and tracts of land fronting and abutting on either side of said street in proportion to the front foot, etc., and did cause tax bills to be issued therefor in payment to the plaintiff as such contractor. It is alleged that the tax bill in suit, which was for $603.395, was the proportionate part charged against the property of defendant, and then follows a description of the tax bill, which is filed. The answer was a general denial.

On the 15th day of June, 1908, the city council passed a resolution declaring it necessary to grade, pave, curb and gutter Anthony street. The grading, curbing and macadamizing were described in detail. The street was to be twenty-two feet from curb to curb. A sublayer of macadam, five inches deep, was to be laid from gutter line to gutter line, prescribing the materials to be used. Upon this was to be laid a four inch course; no stone to be used whose greatest dimensions exceed one and one-half inches. Upon this layer was to be laid a top course of screened gravel containing about fifteen per cent sand, and no stone which shall exceed one inch in its greatest diameter. . . "The last course to be grouted twenty-four inches from each curb to form a gutter. On each side of the street shall be constructed a concrete curb five inches wide and sixteen inches in depth."

The specifications for the gutter were as follows: "Gutter to be formed by grouting the top course a

distance of twenty-four from each curb to form a gutter. Grout to be made of one part Portland cement and six parts clean sand. It being understood that the depth of courses of material above described indicates depths before rolling.''

On the 16th day of March, 1909, the contract was let to plaintiff for the performance of the work according to the plans and specifications. On the 4th day of January, 1910, the work was reported completed, and the council then passed the ordinance levying special tax bills for the work, including that of the defendant.

The time for the completion of the work was fixed at ninety days from the date on which the engineer notified the contractor to begin work. It was provided that: ''Should the contractor fail to complete the work to the satisfaction of the engineer, within the time specified, then there shall be withheld from the money due him on his final estimate, a sum of money equal to ten dollars per day for each and every day of such delay.''

The principal controversy was whether the contractor complied with the specifications as to the guttering. It was shown that the contractor made a mixture for the gutter and spread it for the required width on top of the last course, which made a soft mortar crust to form the gutter. The evidence tended to show that this mixture became dust and was blown or washed away. The result was that the gutter washed out in ditches, and some of the curbing fell.

As to the composition of the top course, there was evidence on the part of the defendant that it was not screened, but varied from stones as large as a man's fist to small particles, and that there was more sand than gravel. And that the work was not done in a good workmanlike manner. On the other hand, plaintiff's evidence tended to rebut that of the defendant as to that matter, also that the mixture was according to the

specifications, and showing by standard authority the meaning of the word "sand." Also, there was evidence tending to show that the cause of the washing of the gutter was that it was overburdened with excessive drainage.

The court, in various instructions, told the jury, substantially, that if the work done by the plaintiff complied with the specifications he was entitled to recover on the taxbill, notwithstanding they might believe the gutters were washed away, or that the street subsequently became in bad condition and out of repair. Other evidence will be referred to hereafter.

By instruction No. 4 the court defined what the word "sand" meant in the contract. It is as follows: "The court instructs the jury that if you find and believe from the evidence that the term 'sand' as used in the contract and specifications for Anthony street means that material that will pass through a number twenty sieve which is a sieve containing twenty meshes to the inch, and if you further find and believe from the evidence that the plaintiff, the contractor, in putting on the top course on said street, used material which contained about fifteen per cent sand, according to the above test, then you must find that as to the top course that the plaintiff did said work according to the contract and the specifications therefor."

The defendant asked an instruction placing the burden of proof upon the plaintiff, which the court refused; and one to the effect that if the gutter constructed "was worthless and wholly unserviceable," the finding must be for the defendant, which the court also refused. And one also to the effect that "the work contracted for must be reasonably adapted to the purpose," etc. This was also refused.

Upon the question of the burden of proof the court gave instruction No. 3 at the instance of plaintiff. It is as follows: "The jury are instructed that the acceptance by the city council of the city of Colum-

bia of the work done by the plaintiff on Anthony street and the issuing to him of the tax bills read in evidence, raised the presumption that the improvement on Anthony street was constructed of the material and in the manner prescribed by the contract, plans and specifications read in evidence, and before the defendant can avoid the payment of said tax bills it devolves upon him to show by the greater weight of the evidence that there was a substantial deviation from the plans and specifications in doing said work and the mere fact that gutter or gutters were washed away or that the street subsequently became in bad condition and out of repair, will not invalidate the tax bills or authorize the jury to find for the defendant.''

The plaintiff recovered for the amount of the tax bill with eight per cent interest. The defendant appealed.

It is insisted that the petition does not state a cause of action. It seems that defendant bases his contention upon the theory that all the steps taken by the council and other matters for doing the work by the contractor are not set forth in the petition.

The city of Columbia being a city of the third class, the pleading in question is to be construed with reference to section 5891, Revised Statutes 1899, now section 9296, Revised Statutes 1909. The section provides that: "It shall be sufficient for the plaintiff, in any suit on such special tax bill, to plead the making of the tax bill sued upon, giving the date and contents thereof, and the assignment thereof, if any, and to allege that the party or parties made defendant own, or claim to own, the lands charged, or some estate or interest therein, as the case may be, and to file the tax bill in suit." And, "Every tax bill shall, in any suit thereon, be prima facie evidence of the validity of the bill, and of the doing of the work and of the furnishing of the material charged for, and of the liability of the land to the charge stated in the bill.''

The petition states all the facts required by the statute. We have examined with some care the cases cited by defendant to sustain his theory, and are free to say that we do not think they apply. The question has often been before the courts, and the holding has been uniform that a petition, alleging the facts required by the statute, is sufficient. And we do not see how it could be otherwise, unless the statute should be disregarded. [Cushing v. Powell, 130 Mo. App. 576; Paving Co. v. Bath Co., 136 Mo. App. 555; Bambrick Bros. v. McCormick, 157 Mo. App. 198.]

The validity of the tax bill is challenged on the ground that the preliminary resolution for doing the work failed in specifications.

The rule is stated to be that: "The resolution of the city council providing for street improvement should state directly or by reference the nature and character of the improvements, otherwise the proceedings are without jurisdiction and the tax bills issued would not be valid." [City of Poplar Bluff v. Bacon, 144 Mo. App. 476; Coulter v. Construction Co., 131 Mo. App. 230.] "The preliminary resolution declaring it necessary that certain streets of a city of the third class should be paved, etc., should substantially inform the public of the kind and character of improvement intended; otherwise the proceedings and tax bills will be invalid." [City of Kirksville v. Coleman, 103 Mo. App. 215.] In that case the resolution declared that, "it is deemed by said council necessary to improve Brown avenue . . . by grading, paving, guttering, curbing and terracing the said avenue," and there was no mention directly or indirectly of the kind of paving.

The statute does not require any particular description of the work to be done in such cases, it only requires that the city council shall, "by resolution declare such work or improvements necessary to be done." [Sections 5859 and 5860, R. S. 1899.] How-

ever, it necessarily implies that there should be some description of the nature and character of the work. It does not mean, however, that it should be specifically described. The character of the work and the nature of the material will answer the purpose of the statute. The case of Muff v. City of Cameron, 134 Mo. App. 607, and authorities cited, we believe, are conclusive on the question. We think 'the resolution is sufficiently explicit as to the guttering. It is to be grouted. Grouting consists of the proper proportions of sand, stone and cement. Every property owner to be affected knew what the resolution meant, and such is the only purpose of the statute.

The statute requires that the council shall "cause such resolution to be published in some newspaper printed in the city for two consecutive insertions in a weekly paper, or seven consecutive insertions in a daily paper." [R. S. 1909, sec. 9255.] The publication was made in a daily paper. There was three gaps in the publication; the first publication was on June the 27th and the last on July the 6th, leaving a gap on June 28th, July 4th and 5th. It is conceded that a paper published six days a week without a Sunday edition is a daily paper within the meaning of the statute, and the continuity would not be broken by the lack of a Sunday edition but, as there were not three Sundays between June 27th and July 6th, there was an omission of one work day. In Porter v. Boyd Pav. Co., 214 Mo. 1, it was held, where the publication was to be for ten successive days and the publication was omitted on two Sundays occurring within the time, that the publication was sufficient. The court said: " 'Ten successive days' means publication on ten successive days when the paper can be published without the publisher running the risk of being indicted for a violation of the Sunday statute of the State." And such is the holding in Mexico v. Lakenan, 129 Mo. App. 180.

It was shown that the paper was not published on Sundays or on the Fourth of July. As the Fourth of July was a holiday under the statute, and the publisher could not compel his employees to work on that day, we see no good reason why the same rule should not govern as that applied to Sundays.

As the time when the work should begin was left to the determination of the engineer, defendant asserts that it operated in indefinitely delaying the completion of the work beyond a reasonable time.

A city council cannot delegate to the city engineer the power to extend the time for the completion of a contract for street improvement. [Childers v. Holmes, 95 Mo. App. 154; McQuiddy v. Brannock, 70 Mo. App. 535; Ayers v. Schnohl, 86 Mo. App. 349.] But it is held that such a provision in a contract of this kind was not an attempt to delegate a legislative duty to the city engineer to delay the beginning and completion of the improvement beyond a reasonable time from the approval of the ordinance. [Halsey v. Richardson, 139 Mo. App. 157, and cases cited.]

It is contended that the contract and specifications are not in conformity to the preliminary resolution because it provided for the construction of a worthless and unserviceable gutter. If there was a difference between the resolution and the specifications in the ordinance and contract as to the work and material that went into the construction of the gutter, the ordinance was void, and the tax bill invalid. [City of Poplar Bluff v. Bacon, supra, and cases cited.] But it does not appear that the provision in the ordinance was a departure from the resolution. The latter provided for grouting without further specifications, and it was left to the council to provide the specifications. If the specifications in the ordinance were faulty and not reasonably suitable for the purpose, it was not the fault of the contractor, in the absence of fraud or collusion. He was bound by his contract to conform to

the provisions of the ordinance, otherwise the tax bills would be invalid. The discretion was vested in the council to provide the specifications for the construction of the gutter, and it was not for the contractor to dictate to the council the method of doing the work. It is said, substantially, where the ordinance is valid in its general scope, and does not show on its face fraud or caprice in its enactment, and is suitable to the subject-matter to which it is applied, the fact that it is inapplicable to defendant's property and imposed a burden on him, without any corresponding benefits to him or his community, cannot for the first time be interposed as a legal defense in a suit on a tax bill for work done under the ordinance. [Herman v. Ring, 85 Mo. App. 235.] "It would be unjust to a contractor who has completed an improvement in full compliance with a contract awarded him by the board of aldermen, which is within the general powers conferred upon it, to refuse payment for the simple reason that the courts may conclude that the means or methods adopted by the board were not the best or cheapest." [Warren v. The Barber Pav. Co., 115 Mo. 572, and cases cited.]

The court, in instruction No. 4 given for plaintiff, undertook to instruct the jury as to the meaning of the word "sand" as used in the contract. The plaintiff was also permitted to introduce evidence as to the technical meaning of "sand."

A construction of the meaning of the language of a contract, as a general rule, is a matter for the court. The word "leg" has a well-defined common meaning and should not be controlled by the meaning placed on it by specialists. [Rogers v. Modern Brotherhood of America, 131 Mo. App. 353.] In ordinary parlance, we all understand what is meant by the word "sand," that is, a composition in which sand predominates. But when it comes to apply the term to ingredients used for building purposes, such as plastering or concrete, it should and does have a technical meaning, because

sand taken from different deposits contains different proportions of other matter such as dirt and stone. [Snoqualmi v. Moynihan Co., 179 Mo. 629.] In such cases, the custom fixing the standard of the quality of a thing prevails. [Evans v. Western Bros. Mfg. Co., 118 Mo. 548.] We do not think the instruction was a comment on the testimony.

It is urged that the court erred in placing the ultimate burden of proof upon the defendant. The following cases are referred to in support of this contention: Cushing v. Powell, 130 Mo. App. 576; Chillicothe v. Henry, 136 Mo. App. 468; Poplar Bluff v. Bacon, supra; Fruin v. Meredith, 145 Mo. App. 586. In Cushing v. Powell, supra, where the question was one of pleading, it is held that, where the declaration counts on a tax bill, a general denial admits any evidence which may show that the necessary preliminary proceedings never ripened into a valid tax bill; and the provision of the statute making the tax bill itself prima facie evidence of its validity cannot affect the rule." And such is the holding in Chillicothe v. Henry, supra, and Poplar Bluff v. Bacon, supra. The other cases cited have no application.

On the other hand, it is held that a tax bill is prima facie evidence of the regularity of the proceeding and the liability of the property to be charged, and the burden is upon defendant to overcome the prima facie effect. [Excelsior Springs v. Ettenson, 120 Mo. App. 215; Savings Bank v. Ridge, 183 Mo. l. c. 518; Moberly v. Hogan, 131 Mo. 19; State ex rel. v. Phillips, 137 Mo. 259.] The principle seems to be well settled in this State.

Many other errors are insisted on by the appellant, but the most of them are unimportant, and others have been so often determined by the appellate courts that it is useless to discuss them. The cause was well tried.

The judgment provides that it shall bear eight per cent interest. This is error. It only bears six per cent. But, as the matter was not called to the attention of the court in the defendant's motion for a new trial, the cause should not be reversed, but the judgment modified in that respect. [Boonville v. Stephens, 141 S. W. 1111.] The judgment is modified so that it bears six per cent interest from date of rendition and the cause is affirmed. All concur.

## ON REHEARING.

TRIMBLE, J.—A rehearing was granted herein on November 25, 1912, and the cause was, at the present term, again argued and submitted. At this second hearing the point was urged, more clearly and forcibly than before, that the trial court erred in giving for plaintiff instruction No. 4. It is copied in full in the original opinion.

The resolution declaring the work necessary to be done, and also the ordinance authorizing it, after specifying the various materials which should enter into the building of said improvement and the method of its construction, contained this provision: "Upon this layer is to be laid a top course of *screened gravel* containing about fifteen per cent sand, and no stone of which shall exceed one inch in its greatest diameter."

The defense, or rather one of the defenses, was that the work was not done in substantial compliance with the specifications. Evidence was introduced by defendant that screened gravel was not used, but that sand was; that sand largely predominated; that instead of there being only fifteen per cent of sand, there was at least from sixty to sixty-five per cent sand in this top course; that consequently it quickly washed away. The defendant, who was one of the witnesses who so testified, when cross-examined, said he did not know the proportion of sand and gravel used in the

top course but that, from observation as one would look to see whether it was sand or gravel, it could easily be seen that the sand largely predominated, and that the gravel had not been screened. Another witness for defendant, J. H. Guitar, swore he selected several representative samples from different parts of the street and separated the sand from the gravel by means of an ordinary sifter used in brick work, and that, by weight there was from sixty to sixty-five per cent sand in the top course, and that screened gravel was not used.

Plaintiff testified that he screened the gravel for the top course so as to take out all stone larger than one inch in diameter; and that he *tested* the gravel with a number twenty and number eighteen sieve (that is, sieves with twenty and eighteen meshes each way to the inch respectively) and that it tested fifteen per cent sand; but that the only *screening* he did was to run it through a coarse screen to take out the big rocks. To meet the testimony offered by defendant that there was from sixty to sixty-five per cent sand in the top course, plaintiff introduced an expert, Hyde, who testified that "sand is known as any hard, granular rock material that has been reduced to particles and these particles being larger than dust and smaller than pebbles." He further testified that the method for determining whether or not a material was "standard sand" was the sifting or fineness test; that "standard sand" *used in making mortar,* is defined, by the American Society for Testing Materials, to be sand that will pass through a twenty sieve and be caught on a thirty sieve. On cross-examination he testified that sand was treated to this test, *not to separate sand from gravel,* but to see whether the sand in question would *make a poorer or better mortar than standard sand.* He also testified that the twenty sieve would be used not to screen the gravel but to test various samples of sand. He was then asked:

"Q. But you would not use a twenty sieve practically to screen sand out of gravel at the pit? A. No, I don't think you would.

"Q. That is not the sort of a sieve they use for screening gravel? A. Unless they wanted to find out what they have got at the bank, in which event they certainly would get a standard sieve.

"Q. The standard sieve is used for testing purposes and not for the work of separating the sand from gravel? A. It depends upon what you want to use it for.

"By the Court: Q. Does the contractor use such a sieve as you have described in his actual work? A. If it is specified that he would use a twenty sieve, he would.

"By Mr. Hinton: Q. If no sieve was specified, is that the practical sieve used for screening gravel, a twenty sieve? A. *No, I should say not.*"

The sand and gravel for the top course of the improvement in question was obtained from a gravel pit. A number twenty sieve is one with twenty meshes to the inch each way, or 400 to the square inch. It would hardly require technical knowledge to understand that if, to screen it, gravel and sand are thrown against such a sieve, too much sand would be retained in the gravel; and that, as Hyde says, a twenty sieve is not a practical or even a proper sieve to screen gravel, especially if the gravel must not contain over fifteen per cent sand or about that. The number twenty sieve is used to test the degree of fineness of sand, or to obtain sand of a particular grade of fineness, known as "standard sand," but not to obtain *gravel* of a certain standard or quality. Much confusion and vagueness of thought will be avoided if we bear in mind at all times that, in the specifications and contract involved herein, the material dealt with was not *sand* but *gravel* of a certain standard and quality. There

was no mention in the contract of the particular grade
of sand, nor that a number twenty sieve was to be
used.    The words "gravel" and "sand" therefore
were used in the contract in the commonly accepted
sense of those terms.    And it was gravel not larger
than one inch in diaemter and containing fifteen per
cent sand that was to be used.    The preliminary reso-
lution specified the same kind of gravel.    This reso-
lution is for the information of the nontechnical prop-
erty owner, and the words used therein must be given
their usual and ordinary meaning unless it clearly ap-
pears from the context that a different meaning was
intended.    As a matter of common sense, gravel for
road building does not mean a material indistinguish-
able from sand except by some scientific test known
only to the technical professional man.    If the con-
tract for building the improvement is to be governed
by a technical definition as to what constitutes a cer-
tain grade of sand, then it could be strictly complied
with by using material which could not be distin-
guished from sand by sight or touch and which dif-
fered from sand only by that degree of fineness repre-
sented by the difference between a twenty sieve and a
smaller one.    But, as shown by Hyde's definition, as
well as by his testimony, a number twenty sieve does
not differentiate sand from gravel but only sand of one
degree of fineness from sand of another degree of fine-
ness.    And this agrees with the ordinary and usual dis-
tinction between gravel and sand.    The former means
"small stones, or fragments of stone, very small peb-
bles, often intermixed with particles of sand."    [Web-
ster's International Dictionary.]    (In the case before
us these stones must not be larger than one inch in
diameter, and the sand intermixed therein must be
about fifteen per cent.)    The same authority defines
sand as being "fine particles of stone but not reduced
to dust; comminuted stone in the form of loose grains,
which are not coherent when wet."    So that, inasmuch

as it is screened *gravel,* containing a certain propor-
tion of sand, which is the material under investigation,
and not *sand* of a particular kind or quality, it would
seem that, aside from any decisions in the books, it
would not be proper to tell the jury that the contractor
has fully complied with his contract if they find that
he has used material which contained about fifteen per
cent sand of a certain degree of fineness only. And
this is in effect what instruction No. 4 does. But, if
authority from the decided cases is needed, it is cer-
tainly true that the construction of the meaning of the
contract is for the court and not an issue of fact for
the jury. "Parties contracting are supposed to use
the language in its commonly accepted sense, and
courts and juries do not require the aid of experts to
tell them what such language means. The learned trial
judge . . . should have ascertained its meaning
from the language of the contract and instructed the
jury accordingly." [Rogers v. Modern Brotherhood,
131 Mo. App. 353.] Of course, if a usage or custom
of a trade enters into and affects the construction of a
contract, this may give words of an otherwise ordi-
nary meaning a technical definition; but such usage
or custom must be so general and well established as
to raise the presumption that the parties had knowl-
edge of it and contracted with reference to it. And
the party claiming such usage must prove it. [Martin
v. Hall, 26 Mo. 386. See also Southwestern Freight
Co. v. Howard, 44 Mo. 71, l. c. 82.] No such custom
was shown herein. Indeed, it would seem from Hyde's
testimony that there was no such custom since he testi-
fied that the sieve used was not the sieve to use in ob-
taining screened gravel.

It is urged that defendant first brought this test,
for determining what was sand, into the case by intro-
ducing the witness, J. H. Guitar, who testified to his
use of a No. 8 sieve for this purpose, and hence de-
fendant having adopted the same theory and having

first invited it, he will not be allowed to change on appeal. But Guitar did not use the sieve to determine what was sand and what was not, but to separate the sand from the gravel so that he could weigh each separately and determine by weight what was the proportion of each. Of course, this would in a measure determine what was sand and what was gravel. But it did not authorize the use of a sieve which would only screen out the finer grades of sand and leave a larger proportion of course sand than was permissible and which was not gravel. Besides, if this did introduce the sieve test as a means of determining what was sand and what was gravel, still this did not authorize the court to tell the jury that if they believed the word "sand" meant sand that would go through a twenty sieve, then the contract had been complied with. There was no evidence that a twenty sieve would separate sand from gravel. On the contrary, there was evidence that it was not the proper sieve for this purpose. It may be that it requires evidence to show the proper sieve for determining what is sand and what is gravel, but if so, the question what sieve is proper should be submitted, instead of telling the jury that, if they believed the contract meant a certain grade of sand, and a sieve was used which would pass that grade and that the gravel contained about fifteen per cent of that grade only, then they must find that the contractor did his work according to contract.

In view of the foregoing we are of the opinion that the instruction is erroneous. The judgment is reversed and the cause remanded for a new trial. All concur.