DELMAR INVESTMENT COMPANY et al., Respondents, v. EDWARD G.. LEWIS et al., Appellants. ·

St. Louis Court of Appeals. Argued and Submitted December 3, 1913. Opinion Filed December 31, 1913.

1. PRINCIPAL AND SURETY: Bond Construed: Direct Promise to Pay. A bond conditioned that the principal and sureties shall hold the obligees and their described property "harmless against, and shall pay, as and when payable according to law, all of the special taxes which shall be levied" against the property, is not a mere bond of indemnity against damages to the obligees, but contains a direct promise to pay, and hence proof of payment by the obligees of special taxes levied against the property was not a condition precedent to a recovery on the bond.

2. SPECIAL TAX BILLS: Improvement of Street in City of Fourth Class: Resolution of Board of Aldermen. Secs. 9410 and 9411, R. S. 1909, providing for the improvement of streets by cities of the fourth class, do not require that the resolution of the board of aldermen describe the work to be done or material to be used, but only require that the resolution "declare such work or improvement necessary to be done," etc.

3. ———: ———: ———: Surplusage. Where a resolution of the board of aldermen of a city of the fourth class, providing for the improvement of a street, under Secs. 9401 to 9411, inclusive, R. S. 1909, recited that it was deemed necessary to improve the street "by *bringing to grade* and paving and curbing the same," but it appeared from the ordinances providing for the work, the contract, and the special tax bills, that the only grading done was subgrading, the words, "by bringing to grade," should be treated as surplusage and not as requiring the street to be brought to an established grade, and hence the whole proceeding was not invalidated on the ground that the grading was not specifically described.

4. ———: ———: ———. Where a street in a city of the fourth class had already been graded, and the grade work essential to the subsequent curbing and paving of it, under Secs. 9401 to 9411, inclusive, R. S. 1909, was subgrading only, such work was not required to be described in the resolution declaring the necessity for the improvement.

Delmar Co. v. Lewis.

5. ———: ———: ———: Publication of Resolution: Evidence.
Where the clerk of the board of aldermen of a city of the
fourth class included in his certified copy of the abstract of
the proceedings for the improvement of a street, under Secs.
9401 to 9411, inclusive, R. S. 1909, a statement of the publica-
tion of the resolution of necessity, as required by law, such
statement was prima-facie proof of the publication.

6. ———: ———: Protests: Presumption of Regularity of Pro-
ceedings. Under Sec. 9411, R. S. 1909, providing that the
board of aldermen of cities of the fourth class shall proceed
to the letting of contracts for public improvements if a ma-
jority of the resident property owners shall not, within ten
days from the last publication of the resolution of necessity
for the improvement adopted by the board, file with the city
clerk their protest against the improvement, and that a find-
ing of the board that a majority have not protested shall
be conclusive, the fact that the board proceeded to let a
contract for an improvement was, in the absence of evidence
to the contrary, sufficient to raise a presumption, in a col-
lateral suit, that a majority of the property owners had filed
no protest.

7. EVIDENCE: Public Bodies: Presumption of Regularity of Pro-
ceedings. In the absence of contrary proof, the presumption
is always in favor.of the regularity of the proceedings of public
bodies.

8. TRIAL PRACTICE: Sufficiency of Objection to Evidence. In
an action involving the enforceability of special tax bills
for municipal improvements, defendant's counsel objected
to the introduction of the contract for the improvements, be-
cause it was not shown that the proper steps had been taken
to authorize the city to execute the contract, or that it was
executed. The court asked him if he meant that the proper
steps had not been taken for the passage of the preliminary
ordinances, and plaintiff's counsel then said, "I have all that
in the abstract that I have just introduced in evidence;"
whereupon defendant's counsel stated, "My claim is that it
does not show that." *Held*, that defendants' objection did not
present to the court a claim that the contract was inadmissible
without proof of the signatures attached thereto.

9. ———: ———. In an action involving the enforceability of
special tax bills for municipal improvements, defendant's coun-
sel objected to the introduction of the tax bills on the ground
that no preliminary proceedings had been shown authorizing
the issuance of the bills, that there had been no proof of the
certificates, that the property was inadequately described in
the bills, and that, therefore, they were not a lien thereon.

*Held,* that such objection was not sufficient to call the attention of the trial court to the fact that the execution of the papers was being challenged.

10. **SPECIAL TAX BILLS: Statutes: Construction.** Statutes relating to public improvements are to be liberally construed, to the end of accomplishing the purpose for which they are designed, always, however, with due regard to the rights of all parties in interest; and this is true where the validity of tax bills is only collaterally in issue, as well as where it is directly involved.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

.AFFIRMED. CAUSE CERTIFIED TO SUPREME COURT.

*Fauntleroy, Cullen & Hay* and *William R. Gilbert,* for appellant, E. G. Lewis.

*John A. Blevins,* for appellant, James F. Coyle.

(1) The bond sued on was one of indemnity and as there was no evidence of the payment of any money by respondents or that they were damaged, they could at most, recover only nominal damages. Walker v. Deaver, 79 Mo. 664; Hunt v. Marsh, 80 Mo. 396; Kellog v. Malin, 62 Mo. 433; Buren v. Hubbel, 54 Mo. App. 617; Bartlet v. Tinsly, 175 Mo. 329. (2) The court erred in holding that the tax bills in question were prima-facie evidence of the regularity of the proceedings for such special assessments and the validity of the tax bills. Sec. 9408, R. S. Mo. 1909. (3) It was not shown by the evidence that the city of University City or the board of aldermen had taken the necessary legal steps to authorize the issuance of the special tax bills and the same were therefore void. (a) The resolution of the board of aldermen was fatally defective. It did not give the board jurisdiction over the improvement of said street. (b) Said resolution was defective in that it did not set forth a description

of the material and the kind of work to be done in the improvement of the street in question, and failed to contain or refer to any specifications for said work. (c) Said resolution included the cost of bringing said street to the established grade, at the expense of the property owners without describing the work of bringing such street to the established grade, as required by section 9410, R. S. Mo. 1909. Smith v. Westport, 105 Mo. App. 221; Kirksville v. Coleman, 103 Mo. App. 215. (d) Said resolution failed to describe the proposed work or to give any description of the materials to be used or any intimation of the costs. Coulter v. Construction Co., 131 Mo. App. 230; Kirksville v. Coleman, 103 Mo. App. 215. (e) The said resolution contained no specification or reference thereto, whereby the property owners might inform themselves as to said improvement and its cost. (f) There is no evidence that the board of aldermen notified the property owners by publishing said resolution, as required by section 9411 of the Revised Statutes of Mo. 1909. (4) There was no evidence that the board of aldermen received or did not receive any protests against said improvement by the property owners. There is no finding by the board of aldermen that a majority of the property owners failed or neglected to file a protest against said improvement, as required by the statute. (5) The contract of the Fruin-Colnon Contracting Company was inadmissible in evidence because it was not shown that it had been executed by the parties. No evidence was offered as to the genuineness of the signatures of the Fruin-Colnon Contracting Company or of E. G. Lewis, Mayor, or of the agent of the bonding company. (6) The tax bills offered in evidence were inadmissible for the reason that it was not shown that they had been executed by the persons who signed the same. No evidence was offered to prove the execution of said tax bills or the signatures of E. G. Lewis, mayor, or Harry W. Castlen, clerk, whose names were

attached thereto. Said tax bills were also inadmissible for the reason that the description of the property mentioned therein was insufficient. (7) The tax bills are void for the reason that they were issued as though they were for separate improvements, and at different rates. Eyerman v. Hardy, 8 Mo. App. 311.

*A. M. Frumberg* and *A. R. Russell* for respondents.

(1) The bond sued on being one of express covenant to pay and not merely of indemnity, suit could be brought upon failure to pay without waiting to be damaged. Bank v. Leyser, 116 Mo. 51; Ham v. Hill, 29 Mo. 277; Rowsey v. Lynch, 61 Mo. 560. (2) No work of bringing the street to the established grade having been included in the contract or the special tax bills, no damage resulted to the property owners and the validity of the tax bills are not affected thereby. Haag v. Ward, 186 Mo. 325. (3) The statute governing cities of the fourth class does not require that the kind of material employed in the improvement shall be specified in the resolution declaring the same necessary. The failure to comply with a requirement which does not exist cannot invalidate the tax nor the tax bills. R. S. 1909, Secs. 9410, 9411.

REYNOLDS, P. J.—This is an action on a bond given to plaintiffs by Edward G. Lewis, as principal, and James F. Coyle, as surety. The conditions of the bond, so far as here relevant, are that the makers "shall hold the said Delmar Investment Company, Southern Real Estate and Financial Company and Charles J. Cella and their property located on the north side of Delmar Boulevard within the limits of the city of University City harmless against, and shall pay as and when payable according to law all of the special taxes that may be levied by the city of University City, Missouri, against the property aforesaid, commonly

called the Delmar Race Track, of the said obligee for the grading, construction, paving and improvement of Delmar Boulevard within the limits of the said city of University City, including the cost of curbs and sidewalks.''

The breach assigned is the failure of the principal in the bond to pay two certain tax bills charged to have been levied against the property in the bond mentioned, for the grading, construction, paving and improvement of Demar avenue, one of the special tax bills being in the sum of $5260.32, the other for $231.28, the tax bills bearing interest at the rate of 8 per cent per annum from September 30, 1910. It is averred that upon completion of the work on August 31, 1910, the city, by its proper officers, issued and delivered to Fruin-Colnon Contracting Company these special tax bills; that notice of the issuance of them and demand upon plaintiffs for payment were made by Fruin-Colnon Contracting Company on the 13th of September, 1910, and that these amounts, with interest at the rate of 8 per cent per annum, are justly due and payable under and by virtue of the levying of these special tax bills; that payment had been demanded by plaintiffs from defendants and payment refused. It is further averred that these tax bills, by their issuance and delivery, became and are valid and subsisting liens upon the property. Judgment is demanded for the penalty of the bond, $25,000, and execution for $5491.60, with interest at the rate of 8 per cent per annum from September 30, 1910, and for costs.

The answers were general denials. Trial was had before the court and a jury, resulting in a verdict, under the direction of the court, in favor of plaintiffs in the sum of $6098.01 and costs. Interposing their motion for new trial, as. also one in arrest of judgment and excepting to the action of the court in overruling them, defendants have duly perfected their appeal to this court.

University City is a city of the fourth class and the law governing such cities is contained in article 5, chapter 84, Revised Statutes 1909, those portions relating to streets, so far as here material, are in sections 9401 to 9411, inclusive.

Counsel for appellants make seven points for reversal which we will take up in their order.

The first point is that the bond sued on is one of indemnity, and as there is no evidence of the payment of any money by respondents, or that they have been damaged, they could, at most, recover nominal damages. We do not think this point well taken. We have set out the material parts of the bond and interpret it as an absolute, express promise to pay, "as and when payable according to law, all the special taxes that may be levied" against the property. It is not a mere bond of indemnity against damage to plaintiffs caused by their having been compelled to pay them, but is one containing a direct promise to pay. The decision of our Supreme Court in The Salmon Falls Bank v. Leyser, 116 Mo. 51, 22 S. W. 504, settles this proposition against this contention of appellants.

The second point made is that the court committed error in holding that the tax bills in question were prima-facie evidence of the regularity of the proceedings for such special assessments and the validity of the tax bills. Without deciding whether, in this action on the bond, these tax bills are prima-facie evidence under section 9408, Revised Statutes 1909, we do not understand that the trial court held them to be prima-facie evidence. A careful reading of the abstract prepared by learned counsel for appellants fails to show any such ruling. They were admitted in evidence, but merely as competent, not as prima-facie, evidence. It is true that the learned trial court said these special tax bills are prima-facie evidence, but it is obvious, from the rulings that he made and the statement of his position, that he considered them prima-facie evi-

dence only in connection with the evidence which had been introduced, showing that the steps required by law preceding their issue, had been taken. There was evidence, outside of these tax bills, "of the regularity of the proceedings for such special assessment, of the validity of the bill, of the doing of the work and of the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bill." [Section 9408, Revised Statutes 1909.]

The third point argued by learned counsel for appellants is that it is not shown by the evidence that the city or the board of aldermen had taken the necessary steps to authorize the issuance of the special tax bills and that the same were therefore void. In support of this assignment, it is contended that the resolution of the board of aldermen was fatally defective and did not give the board jurisdiction over the improvement of the street; defective in that it did not set forth the description of the material and kind of work to be done in the improvement of the street in question, both by paving and curbing but also by bringing it to grade, and failed to contain or refer to any specifications for the work.

The resolution referred to is as follows:

"Resolved, that it is deemed necessary to improve Delmar boulevard in the city of University City, between the easterly city limits and the west line of Oberlin avenue, by (bringing to grade and) paving and curbing the same, such curbing to be set out into the street beyond the sidewalk, and the board of aldermen hereby declares such work of improvement necessary to be done and that, in its judgment and opinion, the general revenue fund of the city is not in a condition to warrant an expenditure therefrom for bringing the said boulevard to the established grade."

It is a sufficient answer to the first part of this contention to say that the statute, sections 9410, 9411, do not require that the resolution shall describe the

work to be done or material to be used. The language is, referring to everything but grading, that the resolution shall "declare such work or improvements necessary to be done." This resolution, as will be seen, went further than finding it necessary to improve the street by paving and curbing, etc.; it also found it necessary to improve "by bringing to grade," and it is claimed that in failing to describe the work of bringing the street to grade, it is fatally defective. While it is true that this resolution says that the board has deemed it necessary to improve the street by bringing it to grade, it would appear by the ordinance providing for the work, the contract, and these special tax bills, that the grading to be done was what is called and known as "subgrading," and not grading necessary to bring the surface to an established grade. In the light of what was actually done, we may treat these words either as surplusage or as not requiring the street to be brought to grade with other streets in the city. For that matter we have no evidence in this case that the city had, by ordinance, ever established any grade. We can disregard this part of the resolution, therefore, and hold the remainder good and sufficient, not invalidating the whole proceeding. [Haag v. Ward, 186 Mo. 325, 85 S. W. 391.] If the street was already on grade and this refers only to work on the subgrade, it does not fall within the requirement of the law that the material should be "described." What description could be given that would furnish any information to the property holders of the necessity of the improvement? That was all the property holders were to pass upon. There is no requirement anywhere that they are to pass upon the kind or description of material, or even cost. The public necessity of the proposed work was the question open to their protestation—nothing else.

It is assigned as error in the admission of the bills in evidence that there is no evidence that the board

of aldermen notified the property owners by publishing the resolution. It is sufficient to say that the clerk of the board included in the certified copy of the abstract of the proceedings, the statement of the publication as required by law. Certainly that was prima-facie sufficient proof of the publication, leaving it open to attack by defendants if the truth was otherwise.

Another assignment is that there is no evidence that the board of aldermen received or did not receive any protests against the improvement by the property owners. Section 9411 provides that the board shall proceed to the letting and if a majority of the resident owners of the property liable therefor shall not, within ten days from the date of the last insertion of the resolution, file with the city clerk their protest against the improvement, then the board of aldermen shall have power to cause such improvement to be made, and the finding of the board that a majority of the owners have not filed protest shall be conclusive and final. It is true that it does not affirmatively appear here that no protests were filed, but as the presumption is always in favor of the regularity of the proceedings of a public body, such as this board was, the fact that it proceeded to the letting is certainly persuasive evidence that no protest was filed. The means of proving protest was so obviously within the power of those attacking the proceedings, that we do not consider the absence of any recital about the protest one way or the other to have deprived the board of jurisdiction or to have nullified its action.

The fifth proposition is that the contract of the Fruin-Colnon Contracting Company was inadmissible in evidence because it was not shown that it had been executed by the parties. When this contract was offered in evidence it was objected to because it was not shown that the proper steps were taken to authorize the city to execute that contract or that the contract was executed. The court asked counsel if he meant by

that that the proper steps had not been taken for the passage of the preliminary ordinance; as to whether that had been shown. Counsel for plaintiffs said: "I have all that in the abstract that I have just introduced in evidence." Whereupon counsel for defendants said: "My claim is that it don't show that." The objection was then overruled and exception saved and afterwards, after the ruling had been made, the contract was read in evidence. This is the only objection made to the admission of this contract in evidence and certainly the trial court would never have imagined from this objection that proof of the signatures to this contract was being demanded by this objection. It most certainly was not specific enough to call the attention of the court or counsel to that and must be disregarded.

When the tax bills were offered in evidence this occurred: Counsel for defendants said that he objected to the introduction of these on the ground "that no preliminary proceedings were shown authorizing the issuance of said tax bills. In fact, there has been no proof of the certificates. And the further fact that the property is inadequately described in the tax bills, and therefore it doesn't constitute a lien on the property." Then followed argument between counsel and court as to the description. It is now claimed that these words, "in fact there has been no proof of the certificates," raises a question of *non est factum*. That will not do. That objection certainly was not sufficient to call the attention of any court to the fact that the execution of the paper was being challenged.

Upon the whole case we think that the defense is without merit and based on very narrow technicalities.

Our Supreme Court in Gist v. Rackliffe-Gibson Construction Co., 224 Mo. 369, 123 S. W. 921, has declared the manner in which questions arising over the letting of and enforcement of payment for public work

should be treated. Noticing a decision by the Kansas City Court of Appeals in Rackliff v. Peters, 136 Mo. App. 168, 115 S. W. 503, our Supreme Court has said (l. c. 378): "The law must not be written from the view point that street contractors have a natural bent to be careless and procrastinating; that city councils are prone to draw ordinances so loosely and accommodatingly as to encourage such carelessness and procrastination and unnecessarily inconvenience the public; or that courts of justice must assume, at the outstart of a given investigation, that the abutting property owner at all times needs judicial protection against natural, preying enemies, to-wit, careless and procrastinating street contractors and accommodating city councils. No principle of law known to us requires that abutting property owners be taken as standing *rectus in curia* to be viewed with a tender eye, while the others stand as objects of suspicion to be viewed with a cold, a calculating, or averted eye. Neither has any advantage of the other. The law assumes that contractors are honest, prompt and efficient, i. e., do their duty until the contrary appears. City councils may repose in the bosom of the same friendly assumption. So may the owner of abutting property who is paymaster. No doubt there are street improvements wronging the abutting property owners, and others in which the contractor suffers wrong. It is the business of courts to right those wrongs when shown to exist. It is not their business to assume they are liable to exist or to indulge in any frosty presumption that either party to such controversy has a predilection or predisposition to perpetrate such wrongs." Observing that while laws and ordinances touching the improvement of streets should be subjected to reasonable analysis and construction, the court continues (l. c. 379): "Yet they should not be subjected to an over-nice analysis or to any unfriendly construction springing from the notion that

the contractor is prone to mischief or that street improvements are evils to be judicially circumvented. This, because, it will be found that such view is bound to end in hardship on the abutting owner as well as the general public. We take it as a self-evident truth that the more technical and sour courts become in interpreting street improvement contracts, ordinances and laws, the more danger and moral hazard to the contractor creeps into every such improvement.'' The gist of the decision is that the provisions of the statutes relating to public improvements are to be liberally construed to the end of accomplishing the purpose for which they are designed, always, however, with due regard to the rights of all parties in interest. We held the same way in Fruin v. Meredith, 145 Mo. App. 586, l. c. 605, 122 S. W. 1107. It is true that this is not an action by the contractor himself but the principle underlying it is the same.

For these reasons we have concluded that the action of the learned trial court in instructing a verdict for plaintiffs for the amount of these special tax bills was correct, and we see no reversible error in the trial of the cause. It follows that the judgment of the circuit court should be affirmed, but as our brethren of the Kansas City Court of Appeals take a different view of the construction to be placed upon sections 9410 and 9411 from that taken by us, in City of Kirksville ex rel. v. Coleman, 103 Mo. App. 215, 77 S. W. 120, and the Supreme Court in the Gist case, supra, has left the correctness of that decision in doubt, we have concluded to certify this case to the Supreme Court for its determination. *Nortoni* and *Allen, JJ.,* concur.