## WHEELER v. CITY OF MUSKOGEE.

No. 3545.   Opinion Filed January 19, 1915.

Rehearing Denied September 8, 1915.

(151 Pac. 635.)

1.   **STATUTES—Construction—Statutes Adopted from Other States.** Article 1, c. 10, Sess. Laws 1907-08, was not borrowed from the laws of any particular state, but was the outgrowth of years of legislation and experience. A construction placed upon similar laws by the Supreme Court of the State of Missouri is not binding upon this court, unless it is clearly shown that the Legislature borrowed article 1, **supra,** from the laws of Missouri, after such laws had been construed.

2.   **MUNICIPAL CORPORATIONS—Local Improvements—Resolution of Necessity.** The resolution of necessity passed by the city council of Muskogee on October 1, 1908, declaring that said council deemed it necessary to grade, pave, macadamize, improve, gutter, drain, and otherwise improve certain streets, avenues, alleys and lanes, therein named, giving 15 days in which the property owners might protest, and publishing said resolution as required by law, is sufficient to give the council jurisdiction to make the improvements, it being unnecessary under section 2, art. 1, c. 10, Sess. Laws 1907-08, to show in said preliminary resolution the nature, character, and width of such improvements and material to be used.

3.   **SAME—Petition.** Where a petition is filed by the owners of more than one-half in area of the lands liable to assessments for improvements under article 1, c. 10, Sess. Laws 1907-08, and the petition is not absolute, but conditioned upon the city council exercising its discretion under section 724, Comp. Laws 1909, in a particular manner therein designated, the council is not bound to proceed under said conditional petition, and may wholly disregard the same.

4.   **SAME—Objections—Limitation of Actions.** Within 60 days after the passing of the ordinance making the final assessment for the paving improvements plaintiff sought to enjoin the officers of the city of Muskogee from enforcing the collection of such paving assessments, and set up in his petition two causes of action or grounds for relief. After the 60 days had expired plaintiff amended his original petition by incorporatng therein several additional causes of acton. **Held,** that the statute of limitation when applied to such new causes of action treats

the action as commenced when the amendments were filed, and such amendments do not relate back to the beginning of the action. The causes of action set forth in the amendments which are not based upon the exceptions contained in section 728, Comp. Laws 1909, are barred.

(Syllabus by Rittenhouse, C.)

*Error from Superior Court, Muskogee County;*
*A. W. Clapp, Special Judge.*

Action by B. B. Wheeler against the City of Muskogee. Judgment for defendant, and plaintiff brings error. Affirmed.

*Myron White* and *Benjamin B. Wheeler,* for plaintiff in error.

*J. B. Furry, S. V. O'Hare,* and *J. C. Davis,* for defendant in error.

Opinion by RITTENHOUSE, C.   The first question presented for our consideration is whether article 1, c. 10, Acts 1907-8, was original legislation, or borrowed from the laws of a sister state. It is contended by the plaintiff in error that said section was borrowed from the laws of the State of Missouri, and therefore this court adopted the construction placed thereon by the Supreme Court of that state in the case of *Phoenix Brick & Construction Co. v. Gentry County,* 257 Mo. 392, 166 S. W. 1034. In this we cannot agree. The First Legislature of Oklahoma adopted, with some slight changes, section 558 of the General Statutes of 1889 of Kansas, by the passage of section 631 of the Statutes of Oklahoma 1890. Section 631 reads as follows:

"When the city council shall deem it necessary to pave, macadamize, curb, gutter, or otherwise improve any street, avenue, alley or lane, or any part thereof, within the limits of the city for which a special tax is to be levied, as herein provided, such council shall, by resolution, declare such work or improvement necessary to be done, and such reso-

lution shall be published for four consecutive weeks in the official newspaper of the city; and if a majority of the resident owners of the property, liable to taxation therefor, shall not, within twenty days thereafter, file wih he clerk of said city, their protest against such improvements, then such council shall have power to cause such improvements to be made, and to contract therefor, and to levy the taxes as herein provided."

At the time of the adoption of this provision the statute of Missouri, which it is contended we borrowed in 1907-08, was not in existence, but first came into existence in the State of Missouri under Laws 1893, p. 65 (Rev. St. Missouri 1899, pp. 1368, 1369). Section 631, *supra,* was slightly amended by section 47, art. 3, of chapter 14, Statutes of Oklahoma 1893 (section 605), and was again amended by section 2, art. 1, of chapter 11, Sess. Laws 1895. In 1897 (Laws 1897, c. 6, art. 2) it was again amended, and in 1901 the Legislature by adopting the paving act (section 99 [section 444], art. 6, c. 12, Wilson's Rev. & Ann. St. Okla. 1903) put in force a very comprehensive act modeled after the previous territorial legislation on the subject. The paving act of 1907-08 was the result of this continuous development of the paving laws commencing with the first territorial legislation in 1890, and if it could be said that it was borrowed from any state it would seem that we took it from the laws of Kansas. However, it has been amended so many times since we adopted the laws of Kansas that it cannot be said that we borrowed it from any state. Under these conditions it cannot be logically contended that the construction given to the Missouri statute in *Phoenix Brick & Construction Company v. Gentry County, supra,* becomes a part of the law of the State of Oklahoma. The mere fact that there is a similarity in the two statutes does not bind us by the construction

placed upon such similar statute by the Supreme Court of the State of Missouri. It is our theory that the paving laws of 1907-08 were the result of years of experience. Practically each succeeding Legislature since 1890 has added to or taken from the previous acts, and since the adoption of the original act in 1890 we have borrowed ideas from numerous statutes on the paving question, which were all incorporated in the paving act of 1907-08.

Was the resolution of October 1, 1908, insufficient to confer jurisdiction upon the mayor and council by reason of the fact that it failed to describe the material to be used? The paving act of 1907-08 (section 2 and section 4) reads as follows:

"Sec. 2. When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain or otherwise improve any street, avenue, alley or lane, or any part thereof, within the limits of the city for which a special tax is to be levied as herein provided, said mayor and council shall, by resolution, declare such work or improvement necessary to be done, and such resolution shall be published in six consecutive issues of a daily newspaper or two consecutive issues of a weekly newspaper, published and having a general circulation within such city; and if the owners of more than one-half in area of the land liable to assessment to pay for such improvement of any such highway shall not, within fifteen days after the last publication of such resolution, file with the clerk of said city their protest in writing against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor and to levy assessments as herein provided, and any number of streets, avenues, lanes, alleys or other public places or parts thereof to be so improved may be included in one resolution, but such protest or objection shall be made as to each street or other highway separately: Provided, that if the owners of more than one-half in area of the land liable to assessment for any such improvement shall petition the mayor and council

for such improvement of any street or part of street, alley, lane or avenue not less than one block in length, describing in such petition the character of the improvement desired, the width of the same and the materials preferred by the petitioners for such improvement, it shall thereupon be the duty of the mayor and council to promptly cause the said improvement to be made in accordance with the prayer of said petition, and in such case the resolution hereinbefore mentioned shall not be required: Provided, further, that any property which shall be owned by the city or county in which such is located or any board of education or school district, shall be treated and considered the same as the property of other owners within the meaning of the provisions of this act, and the property of any city, county, school district and board of education within the district to be assessed, shall be liable and assessed for its proper share of the costs of such improvements in accordance with the provisions of this act."

"Sec. 4. After the expiration of the time for objection or protest on the part of property owners, if no sufficient protest be filed, or on receipt of a petition for such improvement signed by the owners of more than one-half in area of the land to be assessed, if such petition shall be found to be in proper form and properly executed, the mayor and council shall adopt a resolution reciting that no such protest has been filed or the filing of such petition, as the case may be, and expressing the determination of the council to proceed with the improvement, defining the extent, character and width of the improvement, stating the material to be used and the manner of construction and such other matters as shall be necessary, to instruct the engineer in the performance of his duties in preparing for such improvement, the necessary plans, plats, profiles, specifications and estimates."

"Pursuant to the terms of section 2, the city council of Muskogee on October 1, 1908, passed the preliminary resolution, which is termed the resolution of necessity, and is as follows:

"That we deem it necessary to grade, pave, macadamize, curb, gutter, drain, and otherwise improve the hereinafter set forth streets, avenues, alleys, and lanes, and the unpaved portions thereof as described within the city of Muskogee, Oklahoma, to wit:   *   *   *   The owners of land liable to assessment for such improvements of the streets, avenues, alleys, and lanes above set out may within fifteen days after October 9, 1908, file with the city clerk their protests in writ ng against such improvements, separately upon any street, avenue, alley, or lane. Upon failure of the owners of more than one-half in area of the land liable for assessment to pay for such improvements of any street, avenue, alley, or lane, to file their protests in writing as above stated, then the mayor and council shall have the power to cause such improvements to be made, and contract therefor, and levy assessments as is provided by law. The owners of land liable to assessment for such improvements are invited to communicate to the mayor in writing their preference as to the character of the improvements and the character of the paving materials preferred.

"Passed by council October 1, 1908."

This resolution is in the words of section 2, *supra*. All that this section requires is that, when the mayor and city council shall deem it necessary to grade, pave, etc., or otherwise improve any street, avenue, alley, or lane, within the limits of the city, the mayor and council shall, by resolution, declare such work or improvement necessary to be done, and publish such resolution in six consecutive issues of a daily newspaper. It is silent as to whether the resolution should contain a provision adopting the kind of material to be used. But the Legislature evidently intended that the resolution of necessity should not contain a provision adopting any specific kind of material, for by the passage of section 4, *supra,* provision was made for a second resolution reciting that protests had not been filed, and expressing the determination of the council to adopt the ma-

terial to be used, and the manner of construction, to de-
fining the extent, character, and width of the improvement,
instructing the engineer in the performance of his duties
in preparing for such improvement, and procuring the
necessary plans, plats, profiles, specifications, and estimates.
The material is not to be selected until after the publication
of the first resolution. The initial resolution contained
every materal requirement, and was in substantial compli-
ance with the statute giving to the council jurisdiction to
make mprovements.

This question was passed upon in the case of *Waco v.
Chamberlain,* 92 Tex. 207, 47 S. W. 527, which was a suit to
enforce an assessment. The city council adopted a resolution
granting a petition of resident property owners to grade,
pave, and otherwise improve certain streets mentioned in
the petition, leaving to the discretion of the council the na-
ture of the material to be used. The court held:

"It is urged on behalf of the defendants and held by
the trial court that the resolution of September 6, 1894, is
void, because it does not sufficiently describe the work to
be done and the material to be used. The resolution de-
scribes the place where the paving was to be done as 'Fourth
street between the north line of Mariboro avenue and the
north line of Kentucky avenue,' which is sufficiently certain
to give notice to all of the property owners on each side of
that street within those limits that the council had deter-
mined to pave the street in front of their property. The
charter does not require that the council in determining
upon such work shall specify in the resolution the material
to be used in the pavement or other improvement on the
streets. If the charter had so specified, it would be neces-
sary for the council to follow that direction strictly in order
to bind the property owners; but, the Legislature having
failed to make any such provision, the courts cannot in-
graft it upon the charter, and thus destroy the rights of the
contractor because the council has not done that which the

law did not command. The Legislature saw fit, in enacting the charter of that city, to direct that after the work was completed an ordinance should be passed giving the particulars as to the amount assessed upon each property owner and upon each parcel of land fronting upon the said street, and, whether it be good or bad policy to have this description made and filed in the clerk's office after, instead of before, the completion of the work, it is nevertheless the law made by the lawmaking power of the state and furnishes the rule by which the courts must be governed. The resolution was a substantial compliance with the charter, and constituted a valid basis for the subsequent proceedings."

The Supreme Court of Kansas, in the case of *Ransom v. Minnick,* 92 Kan. 953, 142 Pac. 934, in construing a resolution of necessity relating to the construction of sewers, in the second paragraph of the syllabus says:

"A resolution passed by the city commissioners declaring that they had determined it to be necessary to construct a sewer in a certain part of the city, the boundaries of which were described, and directing the publication of the resolution and the preparation of plans, specifications, and estimates of the proposed improvement, is sufficient to institute the proceedings for the construction of a sewer, and gave the commissioners jurisdiction to proceed with the improvement. It was not essential that the resolution should show the definite location of the sewer in the district, its character, or the cost of the same."

The proceeding in the foregoing case was instituted upon a petition which was granted by the commissioners passing a preliminary resolution. Neither the petition nor the resolution adopting the same, defined the extent, character, or material to be used, and in passing on the sufficiency of the preliminary resolution the court says:

"It is contended, however, that the officers of the city failed to follow the provisions of that act. It is insisted that the preliminary resolution passed on May 24, 1911, did

not meet the requirements of the law, nor give the commissioners jurisdiction to construct the sewer. In it was a declaration that it was necessary to construct the sewer in a certain portion of Wichita, the boundaries of which were defined. It also directed the city engineer to prepare and present plans, specifications, and estimates of the sewer, and the city clerk to make publication of the resolution. Appellants contend that it is defective in not stating where within the boundaries defined the sewer was to be laid, and also that there were then no plans and specifications from which the property owners could ascertain the character and extent of the improvement. The contention is that a property owner did not have such information as would enable him to determine for himself the expense which would necessarily fall on his property, nor to decide whether or not he wanted to protest against the improvement. It was competent for the commissioners to determine the necessity for a sewer in the district, and nothing in the statute indicates that more than a general notice that an improvement is to be made is to be given to property owners. The statute then applicable provided that, when the commissioners or council deem it to be necessary, they 'shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published for six days in the official paper of the city,' etc., and it then provides that, if a majority of the resident owners owning a majority in square feet of the property subject to taxation shall not within 20 days protest, the officers shall proceed to make the improvement. Gen. Stat. 1909, sec. 1009. It thus appears that the statute does not require that plans and specifications shall have been filed at that time, nor that the character or cost of the sewer shall be declared; and it can hardly be necessary to make the resolution fuller or more definite than the statute itself. Under the same statute a resolution was passed declaring that a pavement should be made within certain boundaries of a city, and it was held to be sufficient. There the character of the pavement or the costs of the same was not declared and determined, and yet the publication of that resolution was held to be sufficient notice to property owners. *Newman v. City of Emporia,*

32 Kan. 456, 4 Pac. 815. In that case it was held that the notice, general as it was, was sufficient to invite opposition and protest. It related to pavements, instead of sewers; but there is nothing in the statute which indicates that the notice for a sewer shall be other or different from that required in case of a pavement."

In the case of *Kerker et al. v. Bocher et al.,* 20 Okla. 729, 95 Pac. 981, a resolution was passed by the city council of the city of Shawnee under section 444, Wilson's Rev. & Ann. Stat. 1903, declaring the necessity to grade and improve certain streets, without specifying the width, nature, or extent of the proposed improvement, and the court held the resolution of necessity to be sufficient to give the council jurisdiction.

In the case of *Oklahoma City v. Shields,* 22 Okla. 265, 100 Pac. 559, the resolution of necessity was in the same general terms as the resolution in the instant case, and this court sustained the validity of the proceedings.

The plaintiff in error relies upon *Davis et al. v. Board of County Commissioners,* 45 Okla. 284, 137 Pac. 114, but in that case section 3052, Comp. Laws 1909, specifically provided that the notice should contain in appropriate columns a tabulated description of every lot or parcel of land that would be affected by the proposed improvement, and the court found that the petition charged, and the demurrer under consideration admitted, that the notice did not contain "in proper columns a tabulated description of every lot and parcel of land that would be affected by the proposed improvements." In that case there was a positive requirement to tabulate the description of every lot or parcel of land which would be affected, and the court held that a failure to so tabulate such description in the notice rendered the procedings void.

The case of *Phoenix Brick & Construction Co. v. Gentry County, supra,* held, in construing section 9411, Rev. St. Mo. 1909, which statute is similar to the act of 1907-08, that a resolution which failed to describe the work proposed to be done or the material to be used was fatally defective. Prior to this decision the Kansas City and Springfield Courts of Appeal placed this construction on the same section, but the St. Louis Court of Appeals, in the case of *Delmar Inv. Co. et al. v. Lewis et al.,* 180 Mo. App. 22, 162 S. W. 675, on December 31, 1913, under a similar resolution, held that sections 9410 and 9411, Statutes of Missouri 1909, in so far as they refer to cities of the fourth class, do not require that the resolution shall describe the work to be done or material to be used. Thus we see that the appellate courts of Missouri have not been in harmony on this question.

Section 2, art. 1, c. 10, Sess. Laws 1907-08, makes ample provision for the property owners to select the kind of material they desire by giving to the owners of more than one-half in area of the land liable to assessment for such improvement the privilege of petitioning the mayor and city council for such improvement, describing in such petition the character of the improvement desired, the width and the material preferred, and it is then the duty of the mayor and council to promptly cause the improvements to be made in accordance with the prayer of the petition. The Missouri statute as to cities of the fourth class, construed in *Phoenix Brick & Construction Co. v. Gentry County, supra,* makes no provision for a petition by the property owners in which they may select the material as is contained in section 2, *supra,* and the reasoning relied upon in that case has no force when applied to the paving laws of this state. The Legislature wisely eliminated from

the resolution of necessity any detail provisions the absence of which would render the proceedings invalid, and required that under certain conditions the property owners could select the material to be used, if they filed a sufficient petition for that purpose; otherwise the material should be selected by the council in the adoption of the second resolution.

It is next contended that, when plaintiff, with other property owners, filed a petition for the paving of West Okmulgee avenue from Sixth street to Seventeenth street with bituminous concrete, defendant was required by law to act in accordance with that petition, and was prohibited from acting in any other manner, and had no authority to pave said street except as provided in said petition, and plaintiff had a right to rely upon the belief that defendant was acting in accordance with that petition when it passed the resolution of October 1, 1908, and defendant was without jurisdiction to pave said street with sheet asphalt.

It must be borne in mind that, if a sufficient petition was filed, there was no necessity for the resolution of October 1, 1908. The paving laws of 1907-08 provide two means by which paving proceedings may be instituted—one when a petition of the owners of more than one-half in area of the lands liable to assessment is filed with the council; and, second, when the council declare by resolution the necessity of such improvement. In the instant case a petition was filed, which petition is as follows:

"We, the undersigned, your petitioners, hereby request and petition for the improvement, in the manner hereinafter set forth, of the following portion of West Okmulgee avenue, in the city of Muskogee, Muskogee county, State of Oklahoma, to wit: West Okmulgee avenue from the west line of Sixth street to the east line of Seventeenth street—

said portion of said street to be improved by doing the necessary grading, by laying the necessary drainage tile and storm sewers, and by building the necessary manholes, catch-basins, and intake basins and the necessary curb and gutter, and by paving said Okmulgee avenue as above mentioned with the best quality of bituminous concrete laid on a five-inch cement concrete base of the best grade, said pavement to be fifty feet in width, and to be made in accordance with specifications to be made by the city engineer and approved by the city council.

"We, the undersigned petitioners, do hereby certify that at the time of signing this petition we are the sole owners of the property set opposite our respective names, and we hereby consent, each for himself, that our said property be assessed and taxed for the above-mentioned purpose, provided that you, the mayor and council, provide for the payment by the city of Muskogee of the cost of improving the street intersections of said Okmulgee avenue as provided for in the paving law now in force in cities of the first class in the State of Oklahoma.   *   *   *

"Dated this 23d day of September, 1908."

The adoption of the resolution of October 1, 1908, is equivalent to a finding by the council that the foregoing petition was insufficient to confer jurisdiction upon the council. The sufficiency of this petition was put in issue in the trial of the instant case, and the trial court found every fact necessary to support the judgment, and necessarily found the petition insufficient. Whether it was because more than one-half of the property owners had not signed the petition as required by section 2, *supra,* or whether because the petition was conditional, we do not know; either finding would be sufficient to support the judgment. That the petition was not absolute, but conditional, is evident, as it contains this provision:

"Provided that you, the mayor and council, provide for the payment by the city of Muskogee of the cost of improv-

ing the street intersections of said Okmulgee avenue as provided for in the paving laws now in force in cities of the first class in the State of Oklahoma."

Section 724, Comp. Laws 1909, provides:

"* * * · That the mayor and council may in their discretion provide for the payment of the cost of improving street intersections and alley crossings, which cost shall be provided for and paid by said city, and for the purpose of paying such expenses a special and separate levy shall be made and entered against all the property of the said city at the next annual tax levy. * * *"

This statute gives to the mayor and council the exercise of a discretion as to whether the city shall pay for the cost of improving intersections. The petition filed by the property owners took from the mayor and council that discretion, and predicated their petition for improvements upon the condition that the mayor and council would exercise their discretion in a particular manner.

In the case of *Von Steen v. City of Beatrice,* 36 Neb. 421, 54 N. W. 677, it was held that the petition, to confer jurisdiction upon the council, must be signed unconditionally. The petition demanding that the council exercise their discretion in a particular manner was therefore conditional, and the court properly held that the council was not bound to proceed under such conditional petition.

The original petition praying for an injunction was filed October 2, 1909, and relied upon two grounds for recovery: First, that when plaintiff, with other property owners, filed a petition for the paving of West Okmulgee avenue with bituminous concrete, defendant was required by law to act in accordance with that petition, and was prohibited from acting in any other manner, and had no authority to pave said street except as provided in said peti-

tion; second, that the plaintiff was denied the right to have his protest heard against the report of the board of appraisers and considered at the session set for that purpose, or at an adjourned meeting thereof, and no action was taken upon his protest at said session; that the appraisement and apportionment as finally adopted and upon which the assessing ordinance was based were made by the city engineer, and not by a board of three disinterested freeholders, as provided by law, and no notice or opportunity was given plaintiff to complain or object to said appraisement and appor-. tionment; and therefore said appraisement and apportionment are invalid, and all subsequent actions of the council relating thereto and the assessments based thereon are void, and not binding upon the property of plaintiff.

These are the only questions presented by the original petition. We have heretofore disposed of the first question. The contention under the second allegation of the petition is not that the plaintiff did not have notice of the report of the board of appraisers, as he admits in his petition and on page 97 of his brief that June 7, 1909, was set for the time of hearing complaints or objections to the appraiser's report, and that he attended the meeting on that date for the purpose of complaining and objecting to the appraisements and apportionments against his property as shown by the report of the appraisers, but he contends that the hearing was continued from time to time, and he was not given an opportunity to be heard. The record does not show an objection to have been filed or offered for filing, although he was present on the date set for the hearing. The question of whether plaintiff was, by reason of the continuance of the hearing of the report of the appraisers, denied a hearing against such report, was a controverted question of fact, and the judgment of the trial court adverse to such

contention of the plaintiff disposes of the same in so far as this court is concerned.

Five other questions are argued which were raised for the first time by the amendments to the petition of February 11, 1911, and April 19, 1911, the same being more than 60 days after the passage of the ordinance making the final assessment as provided by section 728, Comp. Laws 1909. None of the remaining questions pertain to the adoption and publication by the city council of the preliminary resolution as provided for in section 2 (723), or to the giving of the notice of hearing of return of the appraisers as provided in section 5 (726). Section 728, *supra*, reads as follows:

"No suit shall be sustained to set aside any such assessment, or to enjoin the mayor and council from making any such improvement, or levying or collecting any such assessments, or issuing such bonds, or providing for their payment as herein authorized, or contesting the validity thereof on any ground or for any reason other than for the failure of the city council to adopt and publish the preliminary resolution provided for in section 2 (723) in cases requiring such resolution and its publication and to give the not'ce of the hearing on the return of the appraisers provided for in section 5 (726) unless such suit shall be commenced within sixty days after the passage of the ordinance making such final assessment. * * *"

The matters presented by the original petition have been disposed of against the contentions of the plaintiff, and we are now asked to hold that the amendments setting up new causes of action or grounds for injunction filed more than 60 days after the passage of the assessment ordinance relate back to the date of the filing of the original petition. This is not a case where the amendments merely elaborate upon the previous causes of action brought within

the statute of limitation, but under the pretense of an amendment there are set forth entirely new grounds for relief. When an entirely new cause of action or additional and independent grounds for an injunction are incorporated in an amended petition after the statutory time for filing such cause of action has expired, in applying the statute of limitations, the time will be computed as of the date of filing such amendments.

In the case of *A., T. & S. F. R. Co. v. Schroeder,* 56 Kan. 731, 44 Pac. 1093, cited in 3 L. R. A. (N. S.) 270, the court said:

"A plaintiff cannot deprive a defendant of the benefit of the statute of limitations by ingrafting upon a case commenced in time another cause of action barred by the statute. Accordingly, where S., a section foreman, commenced his action in due time against the railroad company to recover damages for personal injuries sustained in its services by the failure of the company to perform its common-law duties toward him, and more than two years after the injury he filed an amended petition containing an additional cause of action, namely, that the injury was the result of the negligence of a fellow servant, for which the company would be liable only under chapter 93, Laws 1874, held, that the statute of limitations, as applied to such new cause of action, treats the action as commenced when the amendment was incorporated into the pleadings, and not as begun when the action itself was commenced, and that it was barred."

In the case of *Holmquist v. Anderson,* 67 Kan. 861, 74 Pac. 227, it was said:

"A. J. Holmquist sought to enjoin the officials of the city of Salina from making certain improvements and imposing the cost upon the property affected. A demurrer to his original petition was properly sustained because the action was brought before the cost was apportioned or any amount was laid against the plaintiff's property. *Mason v.*

*Independence,* 61 Kan. 188, 59 Pac. 272; *Kansas City v. Smiley,* 62 Kan. 718, 64 Pac. 613. Afterward, during the pendency ·of the ·action, the amount due against his property was ascertained, and more than 30 days later plaintiff filed a supplemental petition setting out this fact. The commencement of the cause of action stated in the supplemental petition dates from the filing of that pleading, and not from the filing of the original petition. *A., T. & S. F. R. R. Co. v. Schroeder,* 56 Kan. 731, 44 Pac. 1093, and this action was therefore brought too late. Gen. Stat. 1901, sec. 1016; *Wahlgren v. Kansas City,* 42 Kan. 243, 21 Pac. 1068."

In the case of *Union Pacific Ry. Co. v. Wyler,* 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, the court said:

"In an action by an employee of a railroad company against the company, based upon the general law of master and servant, and brought to recover damages for an injury which had happened to the plaintiff in Kansas while on duty there, an amended petition which changes the nature of the claim and bases it upon a statute of Kansas giving the employee in such a case a right of action against the company in derogation of the general law, is a departure in pleading, and sets up a new cause of action; and the statute of limitations as applied to such new cause of action treats the action as commenced when the amendment was incorporated into the pleadings, and not as begun when the action itself was commenced. This result is not in any way affected by the fact that the amended petition was filed by consent, as such consent covers only the right to file the amendment, but does not waive defenses thereto when filed."

And it has been said in 25 Cyc. 1308, c. (1), and the numerous cases there cited, that:

"An amendment which introduces a new or different cause of action and makes a new or different demand does not relate back to the beginning of the action, so as to stop

51—3

the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies, although the two causes of action arise out of the same transactions, and, by the practice of the state, a plaintiff is only required in his pleading to state the facts which constitute his cause of action."

The case of *Rice et al. v. Folsom,* 32 Okla. 496, 122 Pac. 236, is analogous. In that case it was held that a motion for a new trial could be amended after three days allowed by statute in which to file the same, by a clearer or more appropriate statement or elaboration of the ground contained in the motion, but that new and independent grounds could not be set up in such amendment.

In the case of *Butt v. Carson,* 5 Okla. 160, 48 Pac. 182, it was said:

"The statute of limitations may be interposed against an amendment to a cause of action, where such amendment sets up an entirely new cause wholly outside of and independent of that previously set forth in the petition, such amendment being, in effect, a new cause of action."

We therefore conclude that the new matters set up as grounds for relief after the expiration of the 60 days as provided by section 728, *supra,* which do not pertain to the adoption and publication of a preliminary resolution nor the giving of the notice of hearing of return of the appraisers as provided by said section, are barred.

Having heretofore disposed of the jurisdictional grounds set forth in the amendment, the cause should be in all things affirmed.

By the Court: It is so ordered.

ON PETITION FOR REHEARING.

Opinion by COLLIER, C. Many grounds are set up by the counsel presenting the motion for rehearing and praying that the opinion filed herein January 19, 1915, be vacated and set aside; that a rehearing be granted, and the cause reversed. Many of the grounds urged for rehearing, we think, are unnecessary to consider, and we review only the motion on the grounds germane thereto.

It is insisted that the instant case is in conflict with the holding of this court in *Morrow v. Barber Asphalt Pav. Co. et al.,* 27 Okla. 247, 111 Pac. 198; *Davis v. Board of County Commissioners,* 45 Okla. 284, 137 Pac. 114, and *Z. J. Fort Produce Co. v. Southwestern Grain & Produce Co.,* 26 Okla. 13, 108 Pac. 386, and that the finding of the trial court is not supported by the evidence.

We most fully agree with the views expressed by the distinguished gentlemen for the motion:

"That to hand down opinions in direct conflict with prior decisions, without overruling them, leaves trial courts and the bar in a state of uncertainty as to the law."

But, while thus most cordially agreeing with these gentlemen, we trust we will be pardoned for insisting, as we feel warranted under the facts in doing, that these learned attorneys are in error, as neither one of said cases is at all in conflict with the opinion in the instant case.

In *Morrow v. Barber Asphalt Pav. Co., supra,* after a most careful examination of the opinion therein, we fail to see the conflict of opinions as averred. In said case the rule is announced that the 60 days' limitation in which to set aside a special assessment made against the lots abutting upon a street to pay the cost of grading does not apply to bar a lot owner of an action to enjoin collection of such

assessment, where the proceedings upon which it is based are void. In the instant case the weight of the evidence clearly shows that the proceedings complained of are not void, but are in accord with the law.

In *Z. T. Fort Produce Co. v. Southwestern Grain & Produce Co., supra,* it is held that the amendment upheld did not substantially change the claim; that the amendment simply amplified the original petition. In the instant case the proposed amendment, which was denied, states new causes of action against which the bar of the statute had run.

In the case of *Davis v. Board of County Commissioners, supra,* the conflict averred between it and the instant case can only exist in imagination.

The complaint of movants that the contract and assessment based thereon were void, and that the contract was not let to the lowest bidder, we beg to say, is without force, as an examination discloses that the finding of the trial court is supported by the weight of the evidence. Applying to the evidence the rule declared in *Schock v. Fish,* 45 Okla. 12, 144 Pac. 584, invoked by movants, which rule has been substantially invoked in the following cases: *Success Realty Co. v. Trowbridge,* 50 Okla. 402, 150 Pac. 898; *Wimberly, Trustee, v. Winstock et al.,* 46 Pac. 645, 149 Pac. 238; *Gillam v. Richart,* 50 Okla. 144, 150 Pac. 1037; *Hatcher v. Kinkaid,* 48 Okla. 163, 150 Pac. 182—we, after a careful review of the same, cannot say that the judgment of the trial court is clearly against the weight of the evidence. Movants have failed to comply with rule 9 of this court (38 Okla. vi, 137 Pac. ix), *i. e.:*

"To show either that some question decisive of the case and duly submitted by counsel has been overlooked by the

court, or that the decision is in conflict with an express statute or controlling decision to which the attention of the court was not called, either in the brief or oral argument, or which has been overlooked by the court."

It follows that the oral argument requested should be refused, and a rehearing in this case should be denied.

RITTENHOUSE, C., not participating.    COLLIER, C., sitting with Division No. 3.

By the Court: It is so ordered.