## PONCA CITY et al. v. EDWARDS et al.

No. 17743. Opinion Filed Sept. 10, 1929.

R. O. Wilson, F. C. Duvall, and Wieck & Armstrong, for plaintiffs in error.

J. F. Murray and David L. Carter, for defendants in error.

LESTER, V. C. J. This suit grows out of an effort on the part of the majority owners of property located in a certain area in Ponca City, Okla., to compel the city authorities to cause certain street improvements to be made in accordance with the petition duly filed with the city clerk by the said property owners thereof.

The property owners in said petition requested and prayed that street improvements should consist of concrete finish.

The governing body of the city ignored the resolution presented by the property owners and in lieu thereof initiated a resolution of its own providing certain street improvements within the said area, and that the said improvements should consist of brick finish.

The majority of the property owners owning property within the said district, within due time, filed a protest against the character of improvements designated in the resolution adopted by the city authorities, and within a short time thereafter the property owners sought and obtained a writ of mandamus in the district court compelling the city authorities to proceed with the construction of the street improvements in accordance with the petition theretofore filed by the property owners.

From this judgment the defendants below appeal.

The following agreed statement of facts was entered into at the trial of the cause:

"It is stipulated and agreed between the parties hereto that on or about the 24th day of September, 1925, the plaintiffs in this action and others were the record owners of more than a majority in area and amount of lots, pieces and parcels and tracts of land situated on South Eighth street in the city of Ponca City, Kay county, Okla., and were subject to the assessment for the costs and benefit of a public improvement if made on South Eighth, as set forth in a petition filed by said plaintiffs and others, attached to this petition identified as exhibit 'A'; that exhibit 'A' is a true and correct copy of said petition filed by the petitioners on the 24th day of September, 1925, with the city clerk of the city of Ponca City; that the petition in itself did represent a majority of the owners in both area and amount of the land liable and subject to assessment.

"It is further stipulated and agreed that the charter of the city of Ponca City in article 6 thereof, provided among other things as follows:

"It is stipulated that all of article 6 of the charter and section 176 of article 14 may be introduced in evidence and made a part of this record.

"It is further stipulated and agreed and made a part of this record that there shall be and are hereby offered in evidence page 280 of the Session Laws of 1923 of the Laws of the state of Oklahoma.

"That after the filing of the petition of September 24th, the commissioners of the city of Ponca City enacted a resolution, No. 429, dated October 15, 1925; that the copy of the resolution attached to plaintiff's petition herein may be considered in evidence. It is further stipulated that this resolution No. 429 was published in the Ponca City News, beginning October 16th, and running for a period of five days.

"It is further stipulated that on the 20th day of October, 1925, the plaintiffs and other property owners filed with the city clerk of Ponca City the protest, a copy of which is attached to plaintiff's petition.

"It is also stipulated and agreed that the signatures on said document filed October 30, 1925, contain a majority in area of the lands and lots liable for the assessment of the paving of South Eighth street.

"It is stipulated that all of the documents that have been introduced are all of the acts of the commissioners of the city of Ponca City relative to the improvement of said district.

"It is stipulated that the mayor and commissioners of the city of Ponca City will not proceed with the improvement of South Eighth street based upon the document called the petition filed with the city clerk of September 24, 1925, which said petition is attached to the plaintiff's petition as exhibit 'A'. It is stipulated and agreed that the petition identified as exhibit 'A' attached to plaintiff's petition herein shall be considered as offered in evidence, and the name or names thereon."

It is contended on appeal by the plaintiffs in error that the city had the right to determine the kind and character of material to be used in the construction of the street improvements in the involved district and that the city authorities were acting within their rights in rejecting the petition of the majority of the property owners.

Section 175 of the charter of Ponca City provides:

"When State Law to Govern. All questions arising in administering said city government, and not provided for in this act,

shall be governed by the state law in such cases made and provided."

Article 6 of the charter of the city of Ponca City provides:

"Street Improvement, Made How. When the board of commissioners shall deem it necessary to grade, pave, macadamize, gutter, curb, drain or otherwise improve any street, alley, public place, park or ground, or any part thereof, within the limits of the city, for which a special tax is to be levied as herein provided, said board shall by resolution declare such work or improvement necessary to be done, which resolution shall be conclusive of the public necessity therefor, and the benefit thereof, and no notice of such action by the board shall be requisite to its validity. Such resolution shall in general terms set forth the nature and extent of the improvement or improvements to be made, the section or sections of any public street, alley, place, park or ground to be improved, the material or materials with which the improvements are to be constructed and the method under which the cost of such improvement is to be paid. Such resolution may specify that such improvements may, at the election of the board, be constructed from different material and may specify different or alternative methods of making such improvements and providing for the payment of the costs thereof. Upon the passage of such resolution it shall be the duty of the city engineer forthwith to prepare specifications for such improvement, which specifications shall embrace the different materials or alternative plans or methods under which such improvements or parts thereof are to be constructed, if such different material or alternative methods or plans of construction or payment are specified, and the character of bond or bonds required of the successful bidder for the construction of such improvements and the maintenance thereof, as herein provided. When such specifications have been prepared they shall be submitted to the board of commissioners for its approval. The board shall have power to require of the contractor or contractors to whom the work may be let, a bond for the faithful performance of the contract and the maintenance of the work in good condition for a term not less than five years from the completion and acceptance thereof, and for the maintenance thereof by the contractor. The bonds required by the board to be executed by the contractor shall be executed by such contractor to whom the work may be let together with one corporate surety acceptable to said board, which shall be a surety company authorized to do business in the state of Oklahoma.

"It is provided, however, that when any such resolution shall provide for the improvement of any street or part thereof by paving or macadamizing, the owners of more than one-half in area of the property liable to assessment for the payment of the cost of such improvement may protest against the making of the improvement; provided that no protest may be made against the making of such improvement when the distance to be improved is not more than three blocks of whatever size and four intersecting streets and there is at the limits of the sections to be improved paving or macadamizing already constructed or under contract for construction or for the construction of which jurisdiction has been secured by the city, on or across the street to be improved. Upon the passage of a resolution providing for any improvement against the making of which such property owners may protest, the city clerk shall notify such owners by publication of a notice one time in a weekly newspaper or five times in a daily newspaper published and of general circulation in the city notifying them of the passage of the resolution, of the streets or part thereof to be improved and that they may file their written protest against the making of such improvement in the office of the city clerk within ten days after the last publication of such notice. The board of commissioners may by ordinance establish and enforce such rules relating to the signing and filing of protests as may be by it deemed proper. Any number of streets or parts thereof may be included in one resolution, but such protest shall be made separately as to each street or part thereof. The filing of a valid and sufficient protest, within the proper time, signed by the owners of more than one-half in area of the property subject to assessment for payment of the cost and expense of such improvement, shall deprive the board of commissioners of power under such resolution to make such improvement. If no sufficient protest be filed, the board of commissioners shall by resolution declare such fact and shall proceed thereafter as in cases where no protest is required. The finding of the board as to the sufficiency of any such protest shall be conclusive and binding for all purposes and against all persons, and it shall have power to have hearings thereon and compel the attendance of witnesses under oath to determine the sufficiency thereof.

"Whenever a petition, signed by the owners of more than one-half in area of the property subject to assessment for the payment of the cost of any such improvement, is filed with the city clerk praying for the improvement of any street, alley, public place or ground as herein provided, it shall be the duty of the board of commissioners to cause the improvement to be contracted for and constructed as herein provided in the case of improvements authorized by resolution."

The city in its brief cites a large number of cases to the effect that, in the absence of restrictions, city authorities generally have

the right to determine the selection of material to be used in the construction of street improvements.

The plaintiffs in error lay great stress on the case of Wheeler v. City of Muskogee, 51 Okla. 48, 151 Pac. 635, but on careful analysis of that case it will be found that it does not support the construction placed thereon by the plaintiffs in error. The court there held that the petition presented by the property owners contained a condition over which the city authorities alone possessed a discretion authorized by law.

The objectionable condition presented in the petition of the property owners referred to in said case is as follows:

"That the petition was not absolute, but conditional, is evident, as it contains this provision: 'Provided that you, the mayor and council, provide for the payment by the city of Muskogee of the cost of improving the street intersections of said Okmulgee avenue as provided for in paving laws now in force in cities of the first class in the state of Oklahoma.'

"Section 724, Comp. Laws 1909, provides:

"'* * * That the mayor and council may in their discretion provide for the payment of the cost of improving street intersections and alley crossings, which cost shall be provided for and paid by said city, and for the purpose of paying such expenses a special and separate levy shall be made and entered against all the property of the said city at the next annual tax levy. * * *.'

"This statute gives to the mayor and council the exercise of a discretion as to whether the city shall pay for the cost of improving intersections. The petition filed by the property owners took from the mayor and council that discretion, and predicated their petition for improvements upon the condition that the mayor and council would exercise their discretion in a particular manner."

But as to the right of the petitioners to select the kind of material they desired, the opinion in that case contained the following language:

"Section 2, art. 1, c. 10, Session Laws 1907-08, makes ample provision for the property owners to select the kind of material they desire by giving to the owners of more than one-half in area of the land liable to assessment for such improvement the privilege of petitioning the mayor and city council for such improvement, describing in such petition the character of the improvement desired, the width and the material preferred, and it is then the duty of the mayor and council to promptly cause the improvements to be made in accordance with the prayer of the petition."

Thus this court held in that case that where a majority of the owners of property in an affected district petitioned that the street improvements consist of material of a certain kind and character, it was then obligatory on the city authorities under the statutes then prevailing to comply with the petition of the property owners.

Section 7, chap. 173, Session Laws 1923, provides:

"Petition for Improvements. If the owners of more than one-half of the area of the land liable to assessments for any improvement shall petition the governing body of such city or town for the improvement of any street, alley, lane, or avenue, or part thereof, not less than one block in length, and shall in such petition describe the character of the improvement desired, the width of the same, and the materials preferred by the petitioners for such improvement, and such petition shall further show that the petitioners are the record owners of such land liable for assessment, the governing body of such city or town may cause such improvements to be made in accordance with the prayer of said petition as nearly as may be practicable, and in such case, the necessary plans, profiles, specifications and estimates shall be prepared and the notice providing for determining the necessity of such improvements shall not be published as provided in section 5 of this act."

In the instant case we think it is conceded by all parties that the charter of Ponca City is sufficient to govern the question presented in this case.

It is provided in section 101 of the city charter, supra:

"Such resolution shall in general terms set forth the nature and extent of the improvement or improvements to be made, the section or sections of any public street, alley, place, park or ground to be improved, the material or materials with which the improvements are to be constructed and the method or methods under which the cost of such improvements is to be paid. * * * The filing of a valid and sufficient protest, within the proper time, signed by the owners of more than one-half in area of the property subject to assessment for payment of the cost and expense of such improvement, shall deprive the board of commissioners of power under such resolution to make such improvement."

When the board of commissioners on its own initiative proposes street improvements by a resolution of necessity and sets forth in such resolution the kind and character of materials to be used therein, the property owners have an unqualified right to file their protest, and it is not incumbent on them to

show any reason therefor, and when such protest is filed, it absolutely and unconditionally arrests the hands of the city authorities to proceed further.

The majority of the property owners in a proposed district have the further and additional right, as set forth in section 101, art. 6, supra, of the charter of said city, to initiate by petition for street improvements, for it is therein provided:

"Whenever a petition, signed by the owners of more than one-half in area of the property subject to assessment for the payment of the cost of any such improvement, is filed with the city clerk praying for the improvement of any street, alley, public place or ground as herein provided, it shall be the duty of the board of commissioners to cause the improvement to be contracted for and constructed as herein provided in the case of improvements authorized by resolution."

It is conceded by the city that a majority of the property owners filed a protest against the proposed street improvements under the resolution of the city.

It is also conceded by the city that when such petition was filed the effort of the city to make such improvements came to naught, so that under the conditions here presented a majority of the property owners filed a petition requesting improvements to be made of material of their selection. The city authorities ignored the petition of the property owners and then attempted to substitute a selection thereon by resolution.

The majority of the property owners then under the city charter had the right to veto the selection so made by the city authorities by a signed protest, and the result of the condition is that no improvements whatever were made or constructed, and unless there is a sane solution to this deadlock the condition thereunder becomes intolerable.

It must be conceded that under the charter of Ponca City, a majority of those owning property in a proposed street improvement district have the absolute right to protest against proposed improvements on the part of the city authorities, and it must also be conceded that the property owners have at all times the right to petition that certain street improvements be made, and, as we view it, it is then made the mandatory duty of the city authorities to proceed in the same manner as if the city had proposed a resolution in the first instance and the property owners had acquiesced therein; therefore, a majority of the property owners in an affected street improvement district are made the final arbiters as to whether or not street improvements may be made at all.

When the people of Ponca City adopted their charter, they did not contemplate that when a majority of property owners rejected by protest the efforts of the city to inaugurate a street improvement, no other method could be provided to improve their streets. The city charter itself, as hereinbefore stated, specifically directs the board of commissioners to do certain things upon the filing of a petition of a majority of property owners in an affected area. A majority of the property owners having acted, no one has the authority to veto their wishes.

No protest is provided for when the majority of the property owners speak through a petition duly filed with the city clerk. There is nothing left to be done upon the part of the board of commissioners except to cause the improvements to be contracted for and constructed in the same manner as if the city had acted in the first instance and there had been no protest filed by the majority of property owners therein.

It is evident that the framers of the charter of the city of Ponca City, realizing the burden of paying for street improvements would fall upon the owners of property, took the precaution of writing into their charter certain provisions that would afford them some protection and give them voice and authority before street improvement assessment could be made against their property, and in this case the board of commissioners of Ponca City had no right to substitute their personal choice in the selection of materials as against the majority of property owners who made known to the city their selection of materials by and through a petition duly filed with the board of city commissioners.

Judgment of the district court is affirmed.

MASON, C. J., and CLARK, RILEY, HEFNER, CULLISON, and ANDREWS, JJ., concur.